STATE OF MISSOURI at the Relation of HERMAN KRAMER v. GUS SCHWARTZ, Appellant.—82 S. W. (2d) 63.

Division One, April 17, 1935.

*June R. Rose* and *Ragland, Otto & Potter* for appellant.

*Irwin & Bushman, Harry L. Buchanan* and *W. A. Seibel* for respondent.

934

COLES, J.—This is a proceeding in mandamus instituted in the Circuit Court of Cole County, Missouri, by relator, the respondent herein, seeking to compel the appellant Gus Schwartz, Building Inspector of Jefferson City, Missouri, to issue to relator a building permit authorizing relator to erect a store building upon a lot owned by him described as lot 1 of block A, Walinko Addition in Jefferson City. The petition for mandamus alleged that relator submitted to appellant building inspector the plans and specifications of a store building proposed to be erected by him upon the lot in question and that appellant duly approved such plans and specifications as in all things complying with the ordinances of Jefferson City relating "to the structure of new buildings within the corporate limits of said City" but that appellant "arbitrarily, wrongfully and without cause" refused to issue a building permit as requested. Appellant entered his voluntary appearance in the cause and consented to accept the petition in lieu of an alternative writ. The appellant filed a return to the alternative writ and thereafter the relator filed a reply to appellant's return. The cause was tried in the court below upon the facts set forth in the pleadings which were accepted by the court and agreed to by the parties as the true facts in the case. The trial court rendered a final judgment on the pleadings in favor of respondent and awarded him a peremptory writ of mandamus

directing the appellant to issue the building permit sought by respondent. Thereafter appellant perfected an appeal to this court.

The appellant in his return to the alternative writ admitted that he had refused to issue the building permit applied for by respondent and sought to justify such refusal by setting up certain ordinances which were alleged in appellant's return to have been duly passed by the city council of Jefferson City designated in the record herein as Ordinance No. 3268 and Ordinance No. 3314. It is alleged in appellant's return that both of the ordinances in question were passed by the city council under the authority conferred by the Act of the General Assembly of Missouri of April 30, 1925 (Laws 1925, p. 307) as amended by the Act of April 7, 1927 (Laws 1927, p. 355). The Act of April 30, 1925, is the so-called Zoning Law of 1925 and the Act of April 30, 1927, is an amendment to that law.

Ordinance No. 3268, above mentioned, provides for the creation of a "City Planning and Zoning Commission;" directs how the commission shall be constituted and appointed; how it shall be organized; provides that it shall make certain reports to the mayor; authorizes it to employ "such city planners, engineers, clerks and other persons as may be authorized by the council," and defines the commission's powers and duties. It appears from appellant's return that the mayor of Jefferson City, pursuant to the provisions of Ordinance No. 3268 has duty appointed a zoning commission and that this commission, since its appointment, has been engaged in a study and survey of Jefferson City, has employed expert planning and zoning authorities and "has prepared a tentative zoning ordinance, and held public hearings thereon, placing the various parts of the city of Jefferson in districts and in every particular setting up a comprehensive planning and zoning system for the city of Jefferson." It must be remarked however, that there is no showing anywhere in the record that any ordinance has been passed by the city council of Jefferson City placing any restrictions upon the right of respondent to erect the proposed store building upon his lot in block A of Walinko Addition except Ordinance No. 3314 to be later referred to.

Appellant in his return sets forth Ordinance No. 3314, designated as "Interim Zoning Ordinance," *in extenso*. Ordinance No. 3314 after a preamble reciting: that Jefferson City has previously appointed a City Planning and Zoning Commission which is "now working towards the completion of a permanent zoning ordinance;" that a zoning plan "as contemplated by the Act of 1925 cannot be made in a few days but will require months;" and "that the city council of Jefferson City recognizing that the City Planning and Zoning Commission can do little good if property owners are allowed to change conditions after the necessary information and data has been obtained and desiring to maintain the *status quo* of conditions while the City Planning and Zoning Commission is gathering

data and information to be used as the basis of its report to the city council towards the enactment of a permanent zoning ordinance;'' proceeds as follows:

" 'Be it Ordained by the Council of the City of Jefferson as follows:

" 'Section No. 1: Wherever less than twenty (20) per cent of the frontage on one side of a street between two intersecting streets is occupied at the time of the passage of this Ordinance by buildings used for commercial or industrial purposes, no additional premises or property shall be dedicated to or used for industrial or commercial purposes, nor shall any building be erected, altered or enlarged for use for commercial or industrial purposes by any person, persons, firm, partnership or corporation: PROVIDED: That where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the City Council may, upon written application for a building permit made to it, and after report from the City Planning and Zoning Commission, vary or modify the application of these regulations relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.

" 'Section No. 2: It shall be the duty of the Building Inspector, upon the receipt of an application for a building permit made pursuant to and required by Article I, Chapter 9, Revised Ordinances of 1925, of the City of Jefferson, Missouri, to investigate and ascertain if any provision of this Ordinance would be violated by the granting of said building permit, and if his investigation shows a violation of the provisions of this Ordinance, it shall be his duty to make a written report of same to the Chairman of the City Planning and Zoning Commission and to the City Council.' ''

Section 3 of the ordinance provides penalties for its violation and Section 4 directs that the ordinance shall be in force and effect "from and after its passage and approval."

Appellant further alleged in his return that after respondent filed his application for the building permit here in question, appellant made an investigation with a view to determining whether he could properly issue such permit under the provisions of Ordinance No. 3314 and found that the lot on which the proposed building was to be erected "is in a residence block and that less than twenty per cent of the frontage in the block and on that side of the street where the proposed building was to be erected was occupied at the time of the passage of Ordinance No. 3314 by buildings used for commercial purposes and that in fact the whole of said block is devoted strictly to residence purposes." Appellant also alleged in his return that under the provisions of Ordinance No. 3314 he made a written report of his investigation to the chairman of the city planning and zoning commission and to the city council and that thereafter the city

zoning commission made its recommendation to the city council to the effect that the requested building permit be not granted and that the recommendation of the city zoning commission was approved by the city council.

The respondent in his reply alleged that the Act of 1925 is unconstitutional and void because it is in contravention of Sections 28 and 53 of Article IV of the Constitution of Missouri; and that the Act of 1927 is unconstitutional and void because it violates the same sections of the Missouri Constitution and is also in contravention of Section 34 of Article IV of the State Constitution. The respondent in his reply further alleged that the "scheme provided for the establishing of zones" is void as a delegation of legislative power. That the ordinance is unconstitutional and void in that it undertakes to take private property for public use in violation of Section 20 of Article II of the Constitution of Missouri also because it undertakes to take private property and to damage private property for public use without just compensation in contravention of Section 21 of Article II of the State Constitution. That "the City of Jefferson had no power, right or authority to institute or pass said ordinance;" and that said ordinance deprives this relator arbitrarily of a right to be heard in his own behalf, and deprives him of a right to appeal from a decision of the "zoning ordinance" and gives him no remedy whatsoever; that the ordinance is in violation of the provisions of Section 10 of Article II of the Constitution of Missouri, and "that said ordinance was passed without any authority of law and is void."

The appellant justified his refusal to issue the building permit here in question solely on the ground that under the provisions of Ordinance No. 3314 it became his duty to decline to issue it. Appellant contends that the ordinance just mentioned is a valid ordinance duly passed by the city council of Jefferson City pursuant to the authority conferred by the Zoning Act of 1925, as amended by the Act of 1927, both of which legislative acts he insists are constitutionally valid as applicable to Jefferson City which is alleged to be a city of the third class. On the other hand respondent urges that the Acts of 1925 and 1927 are each unconstitutional and void for the reasons previously mentioned and further contends that Jefferson City "had no power, right or authority to institute or pass" the ordinance in question.

The Enabling Act of April 30, 1925, provides that "for the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of all incorporated cities, towns and villages," to which the act is applicable, "is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density

of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes." That "for any or all of said purposes the local legislative body may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes" of the act, and "within such districts may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land." That "all such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts." That "such regulations shall be made in accordance with a comprehensive plan" designed to promote certain specified purposes. That the legislative body of the municipality "shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented or changed." That "no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto at which parties in interest and citizens shall have an opportunity to be heard." That "at least fifteen days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality." That the "regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed" in the manner prescribed by the act.

Section 6 of the act provides: "In order to avail itself of the powers conferred by this act (article), such legislative body shall appoint a commission, to be known as the zoning commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission. Where a city plan commission already exists, it may be appointed as the zoning commission."

Section 7 of the act provides that "such local legislative body shall provide for the appointment of a board of adjustment" to consist of five members who shall be freeholders. That the board shall adopt rules in accordance with the provisions of any ordinance adopted pursuant to the act. That appeals to the board may be taken by persons aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of the administrative officer. That the board of adjustment shall fix the time for the hearing of the appeal, give public notice of such hearing as well as due notice to the parties in interest. That the board of adjustment shall have the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an

administrative official in the enforcement of this act (article) or of any ordinance adopted pursuant thereto.

"2. To hear and decide all matters referred to it or upon which it is required to pass under such ordinance.

"3. In passing upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done. In exercising the above mentioned powers such board may, in conformity with the provisions of this act (article), reverse or affirm wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the officers from whom the appeal is taken. The concurring vote of four members of the board shall be necessary to reverse any order, requirement, decision, or determination of any such administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance, or to effect any variation in such ordinance." Section 3 of the Enabling Act of 1925 further provides for review of the decisions of the board of adjustment, or any officer, department, board, or bureau of the municipality, by the circuit court of the county or city in which the property affected is located by certiorari.

It is not contended in this case that Jefferson City has any inherent power to adopt the "interim Zoning Ordinance" here in question. On the contrary appellant, Building Inspector of Jefferson City, expressly set forth in his return to the relator's petition for mandamus that the ordinance mentioned was passed by the council of Jefferson City pursuant to the provisions of the Enabling Act of 1925 as amended by the Act of 1927 and appellant adheres to that position in his brief and argument as presented to this court.

I. We think it clear upon elementary principles that the Enabling Act of 1925, properly interpreted, must be treated as the measure of the power of Jefferson City to pass a valid zoning ordinance. The Enabling Act is a grant of a portion of the State's police power and the extent of the powers granted as well as the manner of their exercise must conform to the terms of the grant. [State ex rel. Nigro v. Kansas City, 325 Mo. 95, l. c. 101, 27 S. W. (2d) 1030; City of Independence v. Cleveland, 167 Mo. 384, 67 S. W. 216; Hays v. Poplar Bluff, 263 Mo. 516, 173 S. W. 676; City of Joplin v. Leckie, 78 Mo. App. 8; Town of Kirkwood v. Meramec Highlands, 94 Mo. App. 637, 68 S. W. 761; City of Chillicothe v. Henry, 136 Mo. App. 468, 118 S. W. 486; State ex rel. v. Wilson, 151

940

Mo. App. 723, 132 S. W. 625; State ex rel. v. Berryman, 142 Mo. App. 373, 127 S. W. 129; City of Richland v. Null, 194 Mo. App. 176, 185 S. W. 250; City of Maryville v. Farmers' Trust Co., 226 Mo. App. 641, 45 S. W. (2d) 103; Women's St. Andrews Society v. Kansas City, 58 Fed. (2d) 593.]

We have already pointed out that the Enabling Act of 1925 provides, among other things, that municipal legislative bodies shall appoint a zoning or plan commission, to "recommend the boundaries of the various original districts and the appropriate regulations to be enforced therein;" that such commission shall make a preliminary report and hold public hearings thereon "before submitting its final report and such legislative body shall not hold its public hearings or *take action until it has received the final report of such commission.*" We have also called attention to the fact that the Enabling Act of 1925 requires that the "local legislative body" shall provide for the appointment of a "Board of Adjustment," to be composed of five freeholders which is directed to review by means of an appeal "any order, requirement, decision or determination made by an administrative official" in the enforcement of the act or of any ordinance adopted pursuant thereto, and is also authorized to "vary or modify" the application of any of the regulations or ordinances relating to the use, construction or alteration of buildings or structures or the use of land where practical difficulties or unnecessary hardships will result from the application of the "strict letter of such ordinance."

■ II. We are of the opinion that the provision of the Enabling Act of 1925 requiring that the municipal legislative body "shall not hold its public hearings or *take action until it has received the final report of the zoning or plan commission,*" must be held to mean that the municipal legislative body cannot pass a valid zoning ordinance such as is authorized by the act until it has received the final report of the zoning or plan commission and held a public hearing therein as prescribed by the act. Furthermore, we are constrained to hold that the provisions of the Enabling Act requiring the local legislative body to provide for the appointment of a "Board of Adjustment" to consist of five members who shall be freeholders with authority to review the orders and decisions of administrative officials substantially in the manner and to the extent specified in the act, is a mandatory provision of the act. In our view both of the provisions of the Enabling Act just mentioned are material and substantial requirements intended to safeguard the property owner, the public and the municipality against injustice, error and precipitate or ill-advised action by local legislative bodies or administrative officers, are mandatory in character, and that compliance with these requirements is essential to the validity of any zoning ordinance

whether denominated "interim" or permanent passed under the authority of the act.

■ III. There is no showing that prior to the passage of the ordinance here in question the city zoning commission had made a "final report," to the city council, although in his return the appellant Building Inspector alleges that the zoning commission "prepared a *tentative* zoning ordinance and held public hearings thereon." Furthermore, it is neither shown nor contended that the city council held a public hearing upon the proposed ordinance before passing it. The "Interim Zoning Ordinance" did not provide for a "Board of Adjustment" such as is required by the Enabling Act of 1925, although the ordinance did provide: "That where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the city council may, upon written application for a building permit made to it, and after report from the city planning and zoning commission, vary or modify the application of these regulations relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfares secured and substantial justice done." We are of opinion that the "Interim Zoning Ordinance" is invalid because in passing it the city council of Jefferson City failed to comply with the mandatory requirements of the Enabling Act of 1925 which require in effect that "the municipal legislative body" shall not pass a zoning ordinance until "it has received the final report of the zoning or plan commission," has held public hearings upon the proposed plan or ordinance and because no provision is made in the ordinance for the creation of a "Board of Adjustment" consisting of five freeholders such as is required by the Enabling Act of 1925. [State ex rel. v. City of Nashville (Tenn.), 60 S. W. (2d) 161; Downey v. Sioux City (Iowa), 227 N. W. 125.]

IV. It is urged by appellant that this "Interim Ordinance" was merely intended as a temporary or emergency measure to preserve the *status quo* of conditions until a permanent ordinance could be passed after the zoning commission has completed its investigation and secured the data and information to be used as the basis of a report to the city council looking to the enactment of a permanent zoning ordinance. It is said that if property owners are allowed to change conditions while the survey and investigation of the zoning commission is in progress and before it is completed that the purposes of the permanent zoning ordinance might be to some extent defeated or rendered ineffectual. These contentions carry the implicit assumption that in the case of a temporary or emergency ordinance the clearly expressed and mandatory provisions of the Enabling Act may be disregarded or relaxed to meet what it said

to be the practical exigencies of the situation. In our opinion all ordinances passed pursuant to the provisions of the Enabling Act of 1925 creating zoned districts and regulating the use of buildings, structures or land within the districts so created, must be regarded as zoning ordinances. All such ordinances whether called "Interim," temporary or permanent must comply with the substantial and mandatory provisions of the Enabling Act. The Enabling Act of 1925 must be construed and applied by this court like any other statute conferring police powers upon a municipality and its clearly expressed and mandatory provisions cannot properly be abrogated, ignored or relaxed to meet the real or supposed practical needs of the municipality or its inhabitants. If the clearly expressed and mandatory provisions of the statute are too rigid or stringent to meet the practical needs of the municipality or its people the defects should be remedied by the Legislature and cannot be cured by the courts.

V. The appellant has called to our attention certain cases which he contends sustain his view that the "Interim Ordinance" here in question is valid. A careful consideration of the cases relied upon by appellant has led us to conclude that they do not in general support the contention made by him in this case. It is true that some of the cases relied upon by appellant have upheld temporary zoning ordinances as valid and have expressed the view that the enactment of such temporary ordinances is often desirable in order to prevent changes in the character or use of property pending the preparation and enactment of a permanent zoning ordinance. But the cases relied upon by appellant do not in general hold that a temporary zoning ordinance can properly be held valid where it is in conflict with the substantial and material requirements of the constitutional or statutory provisions authorizing the municipality to enact zoning ordinances. Thus, in Miller v. Board of Public Works of Los Angeles, 195 Cal. 477, and in Fowler v. Obier, 224 Ky. 742, the view that the zoning ordinances there assailed should be sustained was based upon the judicial conclusion that the power to pass the ordinances had been delegated to the particular municipality either by statutory enactment or under constitutional provisions. The question of the conflict of the ordinances with the provisions of the Constitution or Enabling Act was not discussed. The case of McCurley v. City of El Reno, 138 Okla. 92, does in a measure seem to support the view that a temporary zoning ordinance may properly be sustained as an emergency measure although the ordinance does not conform to the requirements of the legislative Enabling Act. However, in the Oklahoma case just mentioned the court makes reference to certain Oklahoma statutes, other than the Enabling Act, which seem to confer comprehensive police powers upon a municipality and it cannot be determined from the opinion with certainty

whether the authority to pass the temporary zoning ordinance there sustained is referable to the Enabling Act or to the other legislative enactments mentioned in the opinion. But we regard the views expressed in the last-mentioned case as not ¡in harmony with the weight of authority or with sound principles. Furthermore, the persuasive authority of the case last noticed is impaired by the fact that it relies, at least in part, upon the cases of Miller v. Board of Public Works, supra, and Fowler v. Obier, supra, as supporting authorities, when in point of fact, as already pointed out, those cases lend no support to the views set forth in the Oklahoma case mentioned.

█ Appellant further contents that respondent was not entitled to a writ of mandamus, because prior to applying for such writ he had not exhausted his remedies under Ordinance No. 3314 in that he failed to apply to the city council to "vary or modify" the application of the zoning regulations as it is said he was entitled to do under Section 1 of the ordinance. It is hardly necessary to say that as Ordinance No. 3314 was void it was not necessary for appellant to follow or invoke any of the provisions of the purported ordinance.

VI. This court in the case of State ex rel. Cadillac Company v. Christopher, 317 Mo. 1179, 298 S. W. 720, after full consideration of the constitutional infirmities there urged against the Enabling Act of 1925, held that the act was constitutional. We deem it appropriate to say that we adhere to the views announced in that case as sound in principle and as supported by the overwhelming weight of authority. In the case at bar the constitutionality of the Enabling Act of 1925 as amended by the Act of 1927 is challenged by respondent upon some grounds not discussed in the Cadillac Company case, supra, but as under the view we take of the case at bar respondent is entitled to all the redress he seeks without reference to the constitutional questions sought to be raised by him we deem it unnecessary to discuss these questions.

Our general conclusion is that Ordinance No. 3314 as passed by the council of Jefferson City is void and for that reason respondent was entitled to the building permit for which he applied. We are of the opinion that the judgment of the trial court was a proper one and should be affirmed. It is so ordered. All concur.