STATE ex rel. Herbert R. WAHLMANN
et al., Appellants,

v.

Robert G. REIM, Mayor, et al., Respondents.

No. 54476.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1969.

Rehearing Denied Oct. 13, 1969.

**337**

Edwards & Schiff, Ninian M. Edwards, Martin Schiff, Jr., Clayton, and Husch, Ep-

penberger, Donohue, Elson & Cornfeld, John R. Barsanti, Jr., Shulamith Simon, St. Louis, for defendants-respondents.

Thompson, Walther & Shewmaker, Harold B. Bamburg, St. Louis, for plaintiffs-relators (appellants).

SEILER, Judge.

This case is here by our transfer, on application of appellants, under Sec. 10, Art. V, 1945 Constitution, V.A.M.S., from the St. Louis Court of Appeals. It involves the question whether a comprehensive zoning ordinance is subject to referendum, and, if so, the question of who can make the affidavit as to the signatures of petitioners for a referendum election in third class cities operating under the commission form of government.

Plaintiff-relators (appellants) sued for a peremptory writ of mandamus against the city clerk, to compel him to certify to the Kirkwood city council a referendum petition against a newly enacted comprehensive zoning ordinance. The trial court denied the writ of mandamus and also dismissed relators' counts for declaratory judgment and injunction staying enforcement of the ordinance. We reverse.

We first deal with and overrule the city's contention that the comprehensive zoning ordinance before us is not subject to referendum. The city's argument is that the enabling statute, now Sec. 89.010—140, RSMo 1959, V.A.M.S. is a preemption by the state in the field of zoning and operates as an exclusion of Sec. 78.220, RSMo 1959, the referendum statute for cities of the third class having a commission form of government, as does Kirkwood. As here sought to be applied, the word "preempt" means "to seize upon to the exclusion of others: take for oneself", Webster's Third New International Dictionary, p. 1786.

However, we discern no such implication or consequence from the zoning statutes. The legislature was aware of the

referendum rights it had earlier granted, when in 1925 it passed the zoning enabling act. If it had wanted to remove a comprehensive zoning ordinance from the possibility of referendum by the electors of the municipality, it could have done so specifically, but did not. The same was true in 1957, when the enabling act was extended to all municipalities in the state, Laws 1957, p. 274. Chapter 89 does not contain a clear expression of intent by the legislature to occupy the limited field of zoning in all respects. The zoning enabling act shows that it is a matter of state policy that municipalities be given the authority to adopt comprehensive zoning if they so desire. Whether or not they do so is up to the particular city involved. The enabling statute requires establishment of districts and uses with regulations in accordance with a comprehensive plan designed to accomplish specific long-range objectives based on recommendations from a zoning commission, generally with the use of experts, but we see nothing in it which prohibits a referendum on the comprehensive zoning ordinance itself, once it has been adopted by the city council in accord with the enabling act.

■■ The language of 78.220, supra, is explicit.[1] It says "No ordinance" shall go into effect if the required referendum petition is filed until certain other steps are taken. The city contends the clause "except when otherwise required by the general laws of the state" means that a general enabling statute, in this instance Chapter 89, would have the effect of requiring that the referendum provision would not apply. We take this language, however, as merely a redeclaration of the general rule that ordinances must be consistent with the general law of the state and not as meaning that resort to referendum is barred as to any ordinance which is passed in accordance with authority granted by a general law of the state. Unquestionably Chapter 89 is a general law, because it applies to all municipalities, but it does not "otherwise require", either specifically or in effect, a withdrawal of the use of the referendum so far as a comprehensive zoning ordinance is concerned. As has been said, the enabling act "is a grant of a portion of the state's police power" and the manner of the exercise of the power by the municipality "must conform to the terms of the grant", City of Moline Acres v. Heidbreder (Mo.Sup.) 367 S.W.2d 568, 572 and State ex rel. Kramer v. Schwartz, 336 Mo. 932, 82 S.W.2d 63, 66, but this does not mean after a municipality has gone to all the expert planning and careful work involved in adopting a comprehensive zoning ordinance that it is not subject to a referendum and the attendant risk of being upset, if this is what the majority of the electors of the city decide they want.

Many states have adopted the same enabling act as Missouri. It was originally drafted by a commission of experts appointed by the Department of Commerce when Herbert Hoover was secretary, State ex rel. Oliver Cadillac Co. v. Christopher, banc, 317 Mo. 1179, 298 S.W. 720. A good many states permit a referendum on a zoning ordinance, but cases from other states are not helpful on the point before us, because many turn on particular constitutional or statutory provisions not found here. We have not found a case, however, which squarely supports the city's theory that adoption of the enabling statute preempts the field to the exclusion of referendum as to adoption of a comprehensive zoning ordinance. Some cases deny the use of initiative in zoning and deny the use of referendum as to isolated amendments sought to be made in an existing comprehensive zoning ordinance, because these

---

1. The portions of Sec. 78.220 covering this point are as follows:

"78.220. Proposed ordinance—effective, when—referendum.

"No ordinance passed by the council, except when otherwise required by the general laws of the state * * * shall go into effect before ten days from the time of its final passage" [and then follow the provisions as to what is required for a referendum].

procedures would bring about zoning without the comprehensive planning, notice, hearings, and expert assistance which is essential to the creation of a comprehensive zoning ordinance or in the making of amendments and changes thereto. See, for example, State ex rel. Powers v. Donohue (Mo.Sup. banc) 368 S.W.2d 432; Elkind v. City of New Rochelle, 5 Misc.2d 296, 163 N.Y.S.2d 870, aff'd. 4 A.D.2d 761, 165 N.Y.S.2d 709; Hancock v. Rouse (Tex. Civ.App.) 437 S.W.2d 1; Hurst v. City of Burlingame, 207 Cal. 134, 277 P. 308; Olson v. Town of Avon, 143 Conn. 448, 123 A.2d 279; Kelley v. John, 162 Neb. 319, 75 N.W.2d 713; City of Scottsdale v. Superior Court, 103 Ariz. 204, 439 P.2d 290; Rathkopf, The Law of Zoning and Planning (3rd Ed.) Ch. 27, Sec. 3. It may be that initiative altogether and referendum as to particular amendments are irreconcilable with the general zoning enabling statutes, but these questions are not before us. We are dealing only with referendum as to an entire comprehensive zoning ordinance, where the record shows the comprehensive planning, notice, public hearings and recommendations from the planning and zoning commission contemplated by the enabling act were all had, and the sole question is whether the electors can have a referendum on the ordinance so developed.

Turning to the second question before us: Kirkwood passed a comprehensive zoning ordinance. The ordinance is detailed and complete. It is over 90 pages in length. It repealed in toto the earlier comprehensive zoning ordinance and all amendments thereto. The new ordinance drew opposition, particularly provisions as to multiple family zoning. Within the allotted time relators, pursuant to Sec. 78.220, RSMo 1959, filed referendum petitions with the respondent city clerk.[2] The petitions consisted of 245 separate 8½″ x 14″ sheets of paper, each complete in itself as discussed below. They were handed to the clerk at the same time by two persons, about 75 or so from one and the balance from the other. The clerk concluded to treat them all as constituting one petition. The 245 documents contained a total of 2,120 signatures, of which, it is agreed, 1,975 are valid signatures of registered voters of the city.

2. There are three statutes to which particular reference will be made, the pertinent portions of which follow:

"78.220. Proposed ordinance—effective, when—referendum.—No ordinance passed by the council, except when otherwise required by the general laws of the state * * * shall go into effect before ten days from the time of its final passage; and if during said ten days a petition signed by the electors of the city equal in number to at least twenty-five per cent of the entire vote cast for all candidates for mayor * * * protesting against the passage of such ordinance be presented to the council, the same shall thereupon be suspended from going into operation * * * and if the same is not entirely repealed, the council shall submit the ordinance * * * to the vote of the electors of the city * * *. Said petition shall be in all respects in accordance with the provisions of said sections 78.260 to 78.290 except as to the percentage of signers, and be examined and certified to by the clerk in all respects as therein provided."

"78.240. Requisites and form of petition.—Petitions provided for in sections 78.010 to 78.420 shall be signed by none but legal voters of the city. Each petition shall contain, in addition to the names of the petitioners, the street and house number in which the petitioner resides, his age and length of residence in the city. It shall be accompanied by an affidavit of one or more legal voters of the city stating that the signers thereof were at the time of signing legal voters of said city and the number of signers at the time the affidavit was made."

"78.260. Officer may be removed—procedure.—The holder of any elective office may be removed at any time by the electors qualified to vote for a successor of such incumbent. * * * The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes and that each signature to the paper appended is the genuine signature of the person whose name it purports to be."

The minimum required number for action was 1,838 (25% of the total vote for mayor at the last general election).

Each document was headed "Petition for Ordinance Referendum" and was addressed "To the Honorable City Council for the City of Kirkwood, Missouri."

It then read as follows: "We, the undersigned, residents and legal voters of the City of Kirkwood, Missouri, hereby protest against the passage of Bill Number 5097" [then follow some 17 lines descriptive of the ordinance, not necessary to be set out here].

Next followed a paragraph with a demand for repeal or reference of the ordinance, closing with a recital that each of the signers says: "I have personally signed this petition; I am a resident and legal voter of the City of Kirkwood, Missouri; the street and house number of my place of residence, my age and my length of residence in the City of Kirkwood, Missouri, are correctly written after my name."

Next followed blank lines numbered consecutively from 1 through 12 for signatures and other information under these headings:

| Name | Address (Street and House No.) | Age | Length of Residence | Date |
|------|-------------------------------|-----|---------------------|------|
| 1. ___ | ___ | ___ | ___ | ___ |

[and so on, through line 12]

At the bottom of the page appeared the following affidavit for execution by the circulator [we omit the caption and jurat]:

"I, _____ being first duly sworn, on my oath say that I am a legal voter of the City of Kirkwood, Missouri, and that the statements made in this petition are true as I believe; that each of the persons whose names appear on lines numbered 1 to ___, inclusive, signed the attached petition in my presence; that each of said persons was at the time of signing a legal voter of the City of Kirkwood, Missouri; that each signature to said petition is the genuine signature of the person whose name it purports to be; and that there were ___ signers of the attached petition at the time this affidavit is made.

_____          _____
Signature of Circulator                   Address of Circulator"

———◆———

The city clerk struck 160 documents containing a total of 1,356 signatures, on the basis that these petitions were sworn to by circulators who were not petition signers on those particular documents to which they made oath. He relied on Sec. 78.260, particularly the part which says that "One of the signers of each such paper" shall make the required oath. On this basis he reported to the city council there were not sufficient signatures to compel a repeal or referendum election and the city council declared the ordinance in full force and effect.[3] The relators rely on

3. The clerk also threw out 192 signatures on the basis that the signers did not comply with Sec. 78.240, supra, as to stating their "age", when they answered "over 21" or "21" or "50+" or "adult" or something similar, instead of putting down a definite figure. The clerk was in error in this. The legislative requirement as to "age" as used in Sec. 78.240 is satisfied by a statement from which the clerk can determine whether the signer is of legal voting age. The requirement made by the clerk that an exact figure be stated is overly technical. If "age" means that, it could just as well be interpreted to require not only a statement of the years, but also of the additional months and days of a signer's age.

Sec. 78.240, supra, which provides that the petition "shall be accompanied by an affidavit of one or more legal voters of the city".

In State ex rel. Voss v. Davis (Mo.Sup.) 418 S.W.2d 163, 167, we stated: "* * * In the matter of charter amendments by petition, as in initiative and referendum, the people are exercising power reserved to them and the provisions under which they proceed should be construed liberally to the end that their right to determine all proper questions by free and open elections shall be secure. 'Provisions reserving to the people the powers of initiative and referendum are given a liberal construction to effectuate the policy thereby adopted. Such provisions should be construed so as to make effective the reservation of power by the people' * * *."

█ While we are not dealing here with a home rule charter amendment, we are dealing with the referendum process and the observations made in the Voss case, supra, apply. We are convinced the city clerk, the council and the trial court were in error in striking the signatures on the petitions where the circulator who made the oath was not also a signer of that particular document as a petitioner.

█ In the first place, as earlier pointed out, each of the documents filed with the clerk was complete in itself. It contained a petition heading, was addressed to the council, was specific as to the ordinance involved and the demand made, and had the signature and identification of the resident and legal voter who was protesting, as well as the affidavit of the circulator, identified as a legal voter of the city. Such a document is a petition and meets all the requirements of Sec. 78.240. The fact there were 245 such docu-

ments does not change their nature and the clerk was correct in considering them as altogether making up the referendum petition which was before him for action. We said in a similar situation in State ex rel. Voss v. Davis, supra, 418 S.W.2d 1. c. 166, "* * * Although the two sections refer to 'petition', this word must be taken as having a collective meaning—numerous separate petitions rather than a single document, as the latter would be impossible where there were thousands of signatures involved. * * *"

█ Sec. 78.240 makes no requirement that single sheet petitions, such as used here, must be sworn to by one who is also a signer of such petition as a protestor. All that is required is an affidavit from a legal voter of the city and there is no reason why the same legal voter cannot make affidavit to more than one such petition, although, of course, such person could only sign once as a protestor. The requirement of Sec. 78.220 that the petition accord with Sec. 78.260 means when the petition used is of the type mentioned in Sec. 78.260, which is not the kind where the signatures to the petition by the protestors are all on one sheet (as they were in the case at bar), but instead is the kind where the signatures continue from page to page between the beginning and end of the petition. The language of Sec. 78.260—"The signatures to the petition need not all be appended to one paper * * *"—implies there can be two kinds of petitions—one where the signers are all on one page and one where they are not. Both types of petition require the general affidavit called for by Sec. 78.240, which not only provides the safeguard that the signers are legal voters of the city, but also provides a cut-off or termination point against alterations or additions by requiring a statement as to the number of protestor signers at the time

---

We hold the legislature had no such intention.
There were 66 signatures where the age was left blank. This, however, would not be sufficient to reduce the number of valid signatures below the minimum

number required, even if we assume that this omission justified the clerk in not counting such signatures despite the other statements appearing on the face of the petitions indicating that the signers were old enough to vote.

the affidavit is made. If the other method is used—that is, additional pages for signatures following the title, designation of body to which addressed, description of the ordinance and information of this sort —then one of the signers on each page of signatures must make the specific oath required by Sec. 78.260 for that particular page. Under this method there could be pages between the beginning and end of the petition on which nothing but signatures and places of residence of the signer with street and number would appear. Recognition of these two forms of petition harmonizes the statutes in question and provides the flexibility and simplicity which we believe the legislature intended should accompany the use of the referendum process.

As an illustration of what the clerk did and what it would lead to, the record shows that on February 27, 1967, a Mrs. Virginia Becker had signed one of the petitions, along with eleven other signers and she also made the affidavit as circulator. This petition was counted. Within a few days, Mrs. Becker got the signatures of 215 more electors on 19 other petitions. She made the affidavit as circulator, being a legal voter of the city, to each petition. The clerk rejected all 19 petitions because Mrs. Becker was not (and could not be) a signer on any of these as a petitioner. Yet respondents agreed, in oral argument, that had Mrs. Becker used a scroll, 10, 12, or 20 feet long, on which she got all 227 signatures, this would comply with the statutes and she could properly make the affidavit as circulator, and that the same would be true if the 20 petitions were pasted together, or even clipped together at the corner. But they argue that when legal sized sheets in form such as we have here are not clipped together in some way, it means there must be a different circulator for each sheet. We do not believe this is what the legislature meant. The clerk was in error in the way he handled the 160 petitions. With these petitions in and the signatures on them counted, as they should have been, the referendum petition was sufficient.

We have considered the cases cited by respondents on the proposition that the verifier of a petition of the type before us must also be a signer as a petitioner. These cases are distinguishable in that in none of them was there a statute such as Sec. 78.240, supra, which permits the form of petition here used with an affidavit by one who is a legal voter of the city, but who need not also be a protestor signer of the petition.

The trial court should have granted the relief sought. The judgment is reversed and the cause remanded with instructions to issue a peremptory writ of mandamus requiring the clerk to certify the petitions to the city council as being sufficient to require the council to perform its duty of repealing the ordinance or submitting the same to a vote of the electors as required by law, and restraining defendant city from treating said ordinance no. 5085 as being in force, if the city elects not to repeal it, until the ordinance is upheld in the referendum election, if so.

All of the Judges concur.