THE STATE OF MISSOURI at the Relation of
FRANCIS LYONS, Appellant, v. THE BANK
OF CONCEPTION, a Corporation, Respondent.

**Kansas City Court of Appeals, November 3, 1913.**

1. **MANDAMUS: Nature of Writ: Issuance Rests in Sound Ju-
dicial Discretion.** A peremptory writ of mandamus is not a
writ of right. Cases may arise where the applicant for relief
has an undoubted legal right, for which mandamus is the ap-
propriate remedy, but where the court may, in the exercise of
a wise judicial discretion, still refuse to issue the writ.

2. ————: ————: ————: **Mere Naked Right.** It will not be
granted to enforce a mere naked right.

3. ————: ————: ————: **Other Remedy Open to Relator.**
Although the existence of an equitable remedy open to relator
will not deprive a party of his legal remedy by mandamus,
yet the fact that an equitable remedy exists may influence
the exercise of the court's discretion as to whether it will
issue the writ. And if an equitable proceeding will cover the
entire subject in dispute, and the court in such equity case
can grant general as well as special relief, then the writ of
mandamus will be refused.

4. ————: ————: **Not Issued Conditionally: Peremptory Writ
Must Follow the Alternative.** Conditional writs of mandamus
are never issued. The peremptory writ always issues in the
same terms as the original writ except that the former includes
the word "peremptorily" and omits the alternative of showing
cause for noncompliance. Nor can the peremptory writ be
altered to suit what upon the return may be considered the
justice of the case. The peremptory writ can grant no relief
not specified in the alternative writ, and if not warranted in
granting that must refuse any. The writ cannot be granted
upon equitable terms, for while equitable rights may be con-
sidered by the court in determining whether the writ shall
issue, yet when it does issue equity can have nothing further
to do with it.

5. ————: **Return: Tendering Issue.** If an issue on the facts
is to be tendered the return must specifically deny such facts.
The return may, however, be in the nature of a plea by way
of confession and avoidance, in which case it must set up all
the facts necessary to prevent the writ being issued. Or it may
set up facts which may not prevent the writ from issuing but

which will appeal to the court's discretion as to whether the writ shall go. The court is not bound to take the case as the applicant puts it but may consider all the facts in deciding whether it will issue the writ or not.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*J. C. Growney* for appellant.

*Cook, Cummins & Dawson* for respondent.

TRIMBLE, J.—This is a proceeding in mandamus brought by relator to compel the Bank of Conception to acknowledge and treat him as a stockholder in said bank, to restore his name on the stock book and records thereof as a stockholder owning three shares of its capital stock of the par value of $100 per share, and to do such other act or acts as may be needful and necessary to fully and completely restore said relator to all the privileges, rights and benefits of a stockholder in said corporation. Upon the issuance and service of the alternative writ, the bank appeared and filed, finally, a second amended return, to which relator replied, and upon these, the alternative writ, the second amended return and the reply, the case went to trial. The court, after hearing the evidence, declined to issue the peremptory writ and relator appealed.

There is practically no dispute over the material facts. The bank was a corporation with a capital stock of $15,000 comprising 150 shares of the par value of $100 each; and relator was a young man twenty years of age who owned three of such shares which he had received as a gift from his father. In April, 1907, the bank became hopelessly insolvent, and was declared so by the State Bank Examiner who took charge of it and

ordered it closed and would not permit it to be re-opened unless it was put on a solvent basis. The condition of the bank was so deplorable that not only was its capital stock completely wiped out, but, in addition to this, there were $30,000 of worthless or doubtful notes due the bank, and even if these were made good it would still require $15,000 cash to pay the claims of creditors. It was the only bank in the village and it was a matter of much local interest and concern to have the bank reopen and continue if possible. For this and other reasons, all the stockholders, except relator, as well as a large number of the depositors, were anxious to find some plan by which the bank could be preserved as a going concern. Thereupon, with the approval of the Bank Examiner, certain of the stockholders agreed to execute a bond guaranteeing $30,000 of the insolvent notes, and it was also arranged that an assessment of $200 should be made on each share of stock thereby raising a cash fund of $30,000 which would replace the capital stock, pay off the rest of the claims against the bank and put it in sound financial condition. All the stockholders, except relator, agreed to this plan and either paid the assessment of $200 per share, or voluntarily surrendered their stock, which was worthless, and in lieu thereof other stock of the par value of $100 a share, was issued to other persons who paid the required assessment of $200 per share. But, when relator was informed of the plan and asked to contribute $200 on each of his three shares, he refused to do so. And, when told that if he would surrender his shares, as others had done who could not pay the assessment, other persons, in order to save the bank, would take his place as a stockholder and pay in the $600 required of him, he declined to do that also. One of the stockholders, in order to have the plan of reorganization go through, then offered to buy relator's shares, but this was likewise refused. Not being able to induce re-

lator to either pay his part in the rehabilitation of the bank or to get out of the way so that others could do so, and thereby save the bank, relator's stock was cancelled, and other stock of like amount was issued to others who paid the $600 assessment thereon. The bank then reopened and has continued doing business ever since. Of the $30,000 bond given to guarantee the insolvent notes, the bondsmen have paid $28,000 and none of said insolvent notes have been collected. About $13,000 of notes classed as doubtful have been paid by the debtors, but this fact does not render the old stock in the bank at the time of the failure of any value since the amount paid is less than the deficit remaining after taking out the capital stock and guaranteeing the $30,000 worth of insolvent notes at their face value.

After the bank reopened and was doing a prosperous business, relator demanded recognition as a stockholder. The bank refused to accord this to him, although prior to the reorganization, full opportunity was given relator to examine the books and assets of the bank in order that he might determine for himself whether or not it was insolvent. Upon being denied recognition as a stockholder in the reopened bank, relator brought this suit in mandamus to compel the bank to accept and treat him as such "and to do such other act or acts as might be needful and necessary to fully and completely restore relator to all the privileges, rights and benefits of a stockholder" because of the certificate of three shares owned and held by him.

As stated before, the trial court, after hearing the evidence, refused to issue the peremptory writ, and we are asked to review its action in that regard.

It will be observed that the question for our consideration is not whether mandamus is a proper remedy for a stockholder to invoke under ordinary circumstances where he is being denied his rights in the corporation to which he claims to belong, and in which the issuance of the peremptory writ will affect only re-

lator and the respondent. The question is, was the trial court, under the peculiar circumstances of this case, compelled by the rules of sound judicial discretion to grant the peremptory writ? If not, then the court's action in refusing the writ ought not to be reversed. Was its refusal within the bounds of sound judicial discretion?

Mandamus is a legal and not an equitable remedy. [26 Cyc. 141; Merrill on Mandamus, sec. 3.] Of necessity it is a stern, harsh writ, and, when issued, is an unreasoning, inflexible, peremptory command to do a particular thing therein specified without condition, limitation or terms of any kind. Its office is to execute, not to adjudicate; nor can it ascertain or adjust mutual claims or rights between the parties. Being of such a nature, it is not a writ of right to which relator is entitled without regard to the circumstances under which he is demanding its use. Whether it shall be granted or refused rests in the judicial discretion of the court applied to the situation before it and governed by certain established principles and rules of law. The writ is employed only in unusual cases where other remedies fail; the relator must in all cases substantially demonstrate not only the propriety but the justice of his case; the court is not bound to take the case as relator presents it, but may consider defendant's rights, the interest of third persons, the importance or unimportance of the case, and the applicant's conduct in determining whether or not the writ shall go. [26 Cyc. 144.] In some cases it is held that even where a clear prima facie right to the writ is shown, it may be refused. [26 Cyc. 145; State ex rel. v. Bridge Co., 206 Mo. 74, l. c. 134; Merrill on Mandamus, sec. 62; People v. Rock Island, 215 Ill. 488.] It should not issue to compel a technical compliance with the letter of the law in violation of its plain intent and spirit. [Wiedwald v. Dodson, 95 Cal. 450.] It is never

granted in doubtful cases. [High on Extraor. Legal Rem. (3 Ed.), Sec. 9; State ex rel. v. McIntosh, 205 Mo. 589, l. c. 610.] If there is a doubt of either its necessity or propriety it will not go. [26 Cyc. 146.] "Cases may therefore arise where the applicant for relief has an undoubted legal right, for which mandamus is the appropriate remedy, but where the court may, in the exercise of a wise judicial discretion, still refuse the relief." [State ex rel. v. Bridge Co., 206 Mo. 74, l. c. 135; State ex rel. v. Kansas City, etc., Railroad Co., 77 Mo. 143.] Merrill on Mandamus further lays down the rules that the writ will be refused if it operates harshly (Sec. 73); or where third parties not before the court may be injuriously affected (Sec. 83). To justify the issuance of the writ it must appear that a substantial interest is involved as it will not be granted to enforce a mere naked right. [Spelling Extraor. Rem., sec. 1612.] While the existence of an equitable remedy will not operate to deprive the court of power to issue the writ, yet the existence of such a remedy may be taken into consideration as an influential, though not a controlling, factor in the determination of the question whether or not the writ should be issued. If an equitable proceeding will cover the entire subject in dispute, and the court in such equity case can grant general as well as special relief, then the writ of mandamus will be refused. [Spelling, sec. 1376.] Although the existence of an equitable remedy will not deprive a party of his legal remedy by mandamus, yet, the fact that an equitable remedy exists may influence the exercise of the court's discretion as to whether it will issue the writ. [26 Cyc. 172; People ex rel. v. New York, etc., Railroad, 61 N. E. 172; People v. Mayor, etc., of New York, 10 Wend. 395.] Even where a clear legal right is shown, this extraordinary remedy rests, to a considerable extent, within the sound discretion of the court, subject, of course, to well-established principles; and evidence

will usually be received, upon request of the respond-
ent to show that the writ should not issue. [Spelling,
sec. 1371.] Applying these rules to the case in hand
we see that there are a number of reasons why it was
not an abuse of discretion to refuse the writ in this
case. 1. The absolute worthlessness of relator's
stock whereby his right does not involve a substan-
tial interest but at most only a mere naked, technical
legal right. 2. The inflexibility of a peremptory writ,
which cannot be issued with terms of condition there-
in so as to adjust any mutual claims and demands
which may exist between relator and the bank or be-
tween him and the other stockholders. 3. The possi-
bility of doing injustice to third persons not before the
court, and the impossibility of knowing what results
will flow from the granting of the peremptory writ to
acknowledge and treat relator "as a stockholder with
all the privileges, rights and benefits thereof in such
corporation." 4. The existence of a full and complete
remedy open to relator by a bill in equity in which he
can secure, not only the special rights he seeks in this
case, but also all general rights incident to his status
as a stockholder; and in which equitable suit all equi-
ties on each side can be taken into consideration and
adjusted without harm, disorder, injustice, or confu-
sion to anyone. Now, while it is true that the trial
court, in refusing to issue the peremptory writ, found
that relator's stock was worthless, still that was only
one fact presented by the situation, and does not pre-
vent all the other reasons above enumerated from en-
tering into the question of whether the peremptory
writ should be granted. In fact, the finding that the
stock was worthless and that relator has no part or
share in the money now in the bank's capital, creates
or calls into existence the enumerated reasons against
issuing the writ. There was no controversy in the evi-
dence as to the stock being absolutely worthless in the
condition in which the bank was when it closed. It has

been suggested that even if the bank was insolvent, still relator's stock was not without some value, since, relator by holding it would be entitled, after claims against the bank had been satisfied, to his pro rata share of any assets realized out of the supposed insolvent claims, and also to share in any sums recovered by the bank from its officers if it should turn out there had been unlawful mismanagement thereof. As to the possibility of any such assets being collected, or of any wrongful mismanagement of the bank on account of which the bank could recover from its officers so as to call into existence a fund in which relator would be entitled to participate, there is neither an allegation nor the slightest showing. So that at most his ownership of three shares in the insolvent bank would confer on him only a bare technical right to investigate the collection of the bank's assets and the liability of its officers for supposed mismanagement, so that if, from either source, funds should be obtained in excess of the bank's debts, relator could participate in them. But even this will not entitle him to a peremptory writ. A mere naked right is not sufficient to justify its issuance; nor will the fact that he might in the future have a substantial interest by reason of his shares be sufficient to entitle him to the writ. Where relator's substantial rights are conditional upon the happening of some other event or act not yet transpired or performed, the writ will not issue. [O'Neill v. Reynolds, 116 Cal. 264.] So that, even upon the theory that there is a property right in relator's three shares because it gives him the right to investigate the bank's affairs and management and, in the event anything of value is recovered, to participate therein, this does not entitle him to demand that the writ issue, regardless of any other consideration.

Relator refused to do anything to help put the bank on a solvent basis so that the State Bank Examiner would permit it to reopen. Upon his refusal either

to do his part or to get out of the way so that others
might do what he would not, a large sum of money,
nearly $60,000, four times the capital stock of the
bank, was put into the institution that it might be pre-
served. Surely no one will contend that relator should
be allowed to share in this money thus contributed by
others, and thus far no such contention has been openly
made. If, therefore, relator is to be given a place as
stockholder in the bank, it cannot be on equal terms
with the other stockholders. How can the relation of
the parties be properly adjusted by a writ of man-
damus? If he is ordered reinstated as a stockholder
who can say where the results of such order will end.
If his status as a stockholder is established by man-
damus who is to put any limitations, terms or condi-
tions upon the rights, privileges, and benefits flowing
from such status? It has been suggested that although
relator is not entitled to any share in the fund created
by the other stockholders yet we can grant the peremp-
tory writ on condition that he renounce to the corpora-
tion any interest in the fund derived from the volun-
tary contributions of the other stockholders. The
necessity for making the issuance of the writ condi-
tional is an excellent reason for refusing it altogether.
Writs of mandamus are not issued with conditions at-
tached. And if the writ herein should be issued in that
manner, would the condition be valid? And would re-
lator be under any legal obligation to perform the con-
dition? And as a matter of fact relator has met the sug-
gestion above mentioned, not by complying with the
condition proposed but by insisting that no such condi-
tion should be attached to the writ. In addition to all
this, the application for the writ and the alternative
writ seek "to restore relator as a stockholder *with all
the rights, privileges and benefits*" pertaining thereto;
and the peremptory writ must always follow the al-

ternative writ. As said in King v. County Council,
2 Irish Reports, 206, l. c. 214, quoting from Hals-
bury's "Laws of England," Vol. 10, p. 122: "A per-
emptory writ always issues in the same terms as the
original writ, except that it includes the word 'per-
emptorily,' and omits the alternative of showing the
cause against compliance. The original writ is en-
forceable in the terms in which it was issued, *or not
at all*. Nor will the form of the writ be altered to
suit what upon the return may be considered the jus-
tice of the case." And our courts hold that the per-
emptory writ must conform strictly to the alternative
writ. [State ex rel. v. Kansas City, etc., Railroad,
77 Mo. 143; State ex rel. v. Baggott, 96 Mo. 63, l. c.
71.] In Mandamus proceedings the court can grant
no relief except what is specified in the alternative
writ, and if not warranted in granting that must re-
fuse any. [School District v. Lauderbaugh, 80 Mo.
190.] In State ex rel. v. Davis, 54 Mo. App. l. c. 450,
it is said, "The contention is that the peremptory
writ should have required the adjustment of the de-
fendant's accounts as secretary as a condition prece-
dent to the surrender of the books. This contention
is not tenable, for the reason that such a conditional
order would not have conformed to the terms of the
alternative writ or to the prayer of the petition. The
rule in this State now is that the relief asked in the
petition for mandamus is the only relief that can be
granted on a final hearing."

In fact the proposed granting of the writ upon
the condition named is nothing more nor less than a
proposal to grant the writ upon equitable terms. And
that too in an inflexible extraordinary legal proceed-
ing which has nothing to do with equity; and in the
consideration of which no equitable rights or princi-
ples can be taken into consideration *except solely for
the purpose of determining whether or not the writ
should issue*. Up to the point of issuance, the court

can take into consideration the equities of the various parties affected in deciding whether the writ shall go. But when the decision to issue the writ is reached, then matters of equity have no place in the proceeding. This leads up to what the writer conceives to be the great reason why the peremptory writ was properly refused in this case. And that is that, owing to the undisputed facts in the case, relator has a full, complete and more appropriate remedy against the bank by bill in equity wherein he can obtain not only the specific relief here sought (unconditionally, if he be so entitled thereto, or conditionally if it be found that conditions should be imposed), but also any and all general relief to which he may be entitled by reason of the subsequent collection of any supposed insolvent assets, or by reason of any funds recovered by the bank against its officers for any possible mismanagement. That he has such remedy, that it is complete and adequate and more appropriate, furnishing him general as well as special relief, is upheld by numerous authorities, among which are Telegraph Co. v. Davenport, 97 U. S. 369; Pollock v. National Bank, 7 N. Y. 274; Pratt v. Taunton Copper Co., 123 Mass. 110; 6 Pomeroy's Equitable Jur., sec. 864; Cook on Stock and Stockholders, sec. 391; and many others. In other cases it has been held that equity and not mandamus was the proper remedy. [Archer v. American Waterworks, 50 N. J. Eq. 33; Bradbury v. Mutual Res. F. Life Assn., 53 N. J. Eq. 306.] In State ex rel. v. Rombauer, 46 Mo. 155, where a share of stock was transferred but the corporation would not recognize the holder of the stock as a stockholder, the trial court refused to issue the writ and relator appealed. The action of the trial court was affirmed on the ground that the relator had another remedy.

Since relator has another remedy in which all matters can be fully investigated without danger of

doing injustice to anyone, and since, if he were granted a peremptory writ, there is no way of foreseeing or knowing what results may injuriously flow therefrom to other stockholders whose rights and claims cannot be even considered in mandamus, the trial court did not exceed the bounds of sound judicial discretion in refusing the writ, and therefore, the judgment should be affirmed.

Appellant, in a supplemental brief, insists that the return to the alternative writ did not specifically deny the allegations of the alternative writ, and, therefore, no issue was tendered, and consequently the trial court could do nothing but issue the peremptory writ. The return may, however, instead of denying the allegations of the alternative writ, set up facts showing why the writ should not be issued. [26 Cyc. 452.] The court is not bound to take the case as the applicant puts it, but may consider all the facts in determining whether the writ shall go. [26 Cyc. 144.] The return might be said to be in the nature of a plea by way of confession and avoidance, that is, confessing the facts but seeking to prevent the writ from issuing because of the peculiar situation. This method is approved in State ex rel. v. Beyers, 41 Mo. App. 503, 1. c. 507-8. In Chicago v. People, 215 Ill. 235, the return did not dispute the facts but attempted to avoid the issuance of the writ by setting up other facts. The court held this was proper if the facts alleged were sufficient. Such facts might be sufficient to absolutely forbid the court granting the writ, or they might be only such as would address themselves to its sound judicial discretion, and if the court exercised it in refusing the writ, such action should be affirmed unless that discretion has been abused. Finding that it has not been abused, the judgment is affirmed. *Ellison, P. J.,* concurs in a separate opinion; *Johnson, J.,* dissenting.

## SEPARATE OPINION.

ELLISON, P. J.—I will add to the foregoing opinion that there is a class of cases bearing such near relation to this as to be closely applicable thereto. They are cases where a transfer of stock has been made and the transferee denied recognition in the corporation and his stock nullified. It is held that he has no right to a writ of mandamus for the reason that there are other specific remedies. It was directly so ruled by our Supreme Court. [State ex rel. v. Rombauer, 46 Mo. 155.] In Murray v. Stevens, 110 Mass. 95, the court, in speaking of mandamus to compel the issue of shares of stock, said: "Without undertaking to lay down an invariable rule on the subject, we think it must be said that this process was not intended, and is not well adapted, for the trial of mere questions of property. Where the relator merely seeks to be put in possession of corporate shares which have an ascertainable market value, or which can be bought in the market; and where the incidental rights of ownership (such as eligibility to corporate offices, or the right to vote at corporation meetings) do not depend upon the ownership of the specific shares which are the subject of dispute, but could be as well and fully enjoyed by virtue of the ownership of an equal number of other shares, there would seem to be no occasion to resort to the extraordinary remedy of mandamus." Affirmed in Stackpole v. Seymour, 127 Mass. 104.

In Shipley v. Mechanics Bank, 10 Johns. 484, the bank refused to recognize a transferee of stock or to allow the stock to be transferred to him. The court said: "There is no need of the extraordinary remedy by mandamus, in so ordinary a case. It might as well be required in every case where trover would lie. It is not a matter of public concern, as in the case of public records and documents; and there cannot be any necessity, or even a desire of possessing the identical

shares in question. By recovering the market value of them, at the time of the demand, they can be replaced. This is not the case of a specific and favorite chattel, to which there might exist the *pretium affectionis*."

Other cases directly in point, are Birmingham Fire Ins. Co. v. Commonwealth, 92 Pa. St. 72; Wilkinson v. Providence Bank, 3 R. I. 22; Baker v. Marshal, 15 Minn. 177; Durham v. Monumental Silver Mining Co., 9 Ore. 41; Kimbal v. Union Water Co., 44 Cal. 173; Galbraith v. Building Assn., 43 N. J. L. 389; Freon v. Carriage Co., 42 Ohio St. 30.

It is evident that if relator was to accomplish what he seeks by the aid of mandamus, he would be placed in a situation of equality of authority and profit in those things which it is claimed the management, effort and money of other persons have brought about. In the opinion by Judge TRIMBLE we have shown that there is a procedure open to him whereby it may be unconditionally commanded that he be put into that position if he is so entitled; or whereby, on equitable adjustment, he may be put there conditionally on his doing equity; or, if equity so demands in the circumstances of the showing which may be made, that he be compensated for whatever loss he may have sustained by the conversion of his stock. There seems to be no good reason why he should not be remitted to such procedure; or, if he so chooses, to an ordinary action at law for damages for loss of his stock.

I think the judgment should be affirmed.

## ON MOTION FOR REHEARING.

TRIMBLE, J.—It is earnestly insisted, in a motion for rehearing, that the opinion proceeds upon a mistaken view of the facts when it says the trial was had upon the alternative writ, the *second* amended return, and the reply; that the second amended return was not

filed until after the evidence had been introduced; that only in the second amended return was there any allegation of the insolvency of the bank; and that it was error to thus allow the second amended return to be filed at this time.

In the first place appellant did not see fit to incorporate the prior returns in the abstract. Only the second amended return is set out therein, so that we cannot say with absolute certainty that no allegation in reference to the insolvency of the bank was contained in said prior returns.

But, however this may be, it is not material whether they did or not, since the court did not err in allowing the second amended return to be filed. The parties stipulated in open court that it could be so filed. Counsel for appellant is not the same counsel who tried the case, and for this reason may, perhaps, be excused for overlooking this solemn agreement made between the parties at the beginning of the trial:

"By. the Court: It is agreed by the parties that after the evidence·is in either the relator or respondent shall have the privilege of amending any pleading in the case so as to conform to the facts.

"By Mr. Moran, counsel for relator. That is the agreement.

"By Mr. Cummins, counsel for respondent. All right.

"By the Court. Or that otherwise becomes necessary in their judgment."

It cannot be successfullly claimed that the above agreement was limited to the evidence heard at that time. Because the agreement was that "after the evidence is in" either party should have the privilege of "amending any pleading so as to conform to the facts." And the fact that there was an interval between the evidence taken at that time and the evidence heard later, and that said second amended return was not filed until after this last evidence was in, cannot

alter the matter. Because the later evidence was but a continuation of the former trial, as shown by the following agreement entered into at said later hearing:

"By Mr. Moran, counsel for relator. There is an oral agreement between Mr. Cummins and myself that all the testimony taken at the former trial be received in evidence at this hearing.

"By the Court. All the evidence heretofore taken.

"By Mr. Cummins, counsel for respondent. That is my understanding.

"By the Court. This is but a continuation of the case and all the evidence heretofore taken is before the court, and now we are to hear additional evidence simply.

"By Mr. Cummins. That is my understanding.

"By Mr. Moran. Very well."

At this portion of the hearing both appellant and respondent offered evidence in behalf of their respective sides, and when all the evidence was in, respondent, pursuant to the stipulation, and by leave of court, filed the second amended return. And appellant *filed a reply thereto*. It is true, objection was made to the filing of said second amended return, but such objection could not overturn the solemn agreement theretofore entered into. And the contention was not made then that this agreement related only to the evidence taken at that time, but that no agreement whatever had been made according to counsel's recollection. So that, in legal effect, the case was tried on the alternative writ, the second amended return, and the reply, as stated, for the sake of brevity, in the opinion.

The other matters complained of in the motion can have no possible effect on the result reached. The motion is, therefore, overruled. All concur upon the point herein discussed but *Johnson, J.,* having dissented from the conclusion reached in the case, is of the opinion that a rehearing should be granted.