State of Missouri, at the Relation of Henry Folkers, Relator, Appellee, v. Charles A. Welsch, Building Commissioner of the City of St. Louis, Missouri, Respondent, Appellant.— 124 S. W. (2d) 636.

St. Louis Court of Appeals.   Opinion filed February 7, 1939.

*Joseph Boxerman* for relator.

16

*E. H. Wayman* and *Oliver Senti* Associate City Counselor, for respondent-appellant.

McCULLEN, J.—This action was brought by Henry Folkers, hereinafter referred to as relator, in the Circuit Court of the City of St. Louis to have that court issue a writ of *mandamus* commanding Charles A. Welsch, Building Commissioner of the City of St. Louis,

who will be referred to as respondent, to grant a permit for the erection of a gasoline filling station on certain real estate located in the City of St. Louis. An alternative writ of *mandamus* was issued, to which respondent filed his return, after which, in due time, the cause came on for hearing and was submitted on the merits by both parties on the pleadings. The court thereafter entered its decree ordering the issuance of a peremptory writ of *mandamus* directing respondent to issue forthwith to relator the permit prayed for. After an unavailing motion for a new trial, respondent has brought the case to this court by appeal.

The petition and alternative writ, after alleging that respondent is and was at all times mentioned therein the duly appointed, qualified, and acting Building Commissioner of the City of St. Louis, alleges that relator is and was at all said times the owner of Lots No. 1, 2 and the western eighteen feet of Lot No. 3, in Block 12 of Northampton (also referred to in the briefs as North Hampton), and Block No. 6038 of the City of St. Louis, having an aggregate front of one hundred and eight feet on the south line of Chippewa Street, by a depth southwardly of 132.50 feet to a right of way and easement shown on plat recorded in Plat Book 21, page 119, and dedicated as an alley by instrument recorded in Book 4313, p. 382; bounded west by Brannon Avenue.

Relator further alleges that there is and was at all said times in force and effect an article of the Revised Code or general ordinances of the City of St. Louis, being Article XVI, Section 3379, et seq., of said City, and being Ordinance No. 36614, approved March 7, 1928, generally known as the Building Code of the City of St. Louis; that in said Building Code there are certain provisions relating to the erection of buildings and structures and requiring, as a condition precedent, the procurement of a permit from the Building Commissioner of said City. Relator further alleges that the Building Code of said City prescribes the method of procurement of such a permit, after which the petition and writ set forth in full Sections 3386, 3387, and 3388 of said Building Code.

Section 3386 of the Building Code provides in substance that applications for permits shall be made in writing upon forms issued by the Division of Building and Inspection of the City of St. Louis, and prescribed in detail the manner in which applications shall be filled out.

Section 3387 provides, among other things, that true copies of so much of the plans and specifications as in the opinion of the Building Commissioner may be required to illustrate the features of the construction and equipment of the building proposed to be erected shall be filed in the Division of Building and Inspection, and prescribed in detail the manner in which the plans shall be drawn.

Section 3388 of said Building Code prescribed the terms and condi-

tions upon which the Building Commissioner shall give approval to plans and specifications and issue a permit on compliance with the Building Code as well as the grounds upon which the Building Commissioner shall refuse to issue a permit.

The petition and writ further allege that relator made application to respondent for the issuance of a building permit for the erection by relator of a gasoline filling station on the property described; and that he complied in all respects with the requirements of the charter and ordinances of said City of St. Louis; that his application and the plans submitted to respondent were and are in conformance with said Building Code; and that respondent thereupon approved relator's application for a permit and decided that relator had complied in all respects with the conditions precedent to the issuance of such permit so as to entitle relator to the issuance thereof; but that, notwithstanding such finding and decision by respondent, respondent has failed and refused to issue such permit due to objections to the issuance thereof interposed by third parties. The petition and writ further allege that relator tendered the necessary fees to respondent; and that respondent, having approved relator's application and having decided that relator was entitled to a permit but for such objections, thereupon became obligated, as a purely ministerial duty on his part, to issue such permit; and that respondent possessed no discretion or any right to refuse the issuance of such permit.

The return of respondent admits substantially all the allegations of relator's petition and the alternative writ, except the allegation that relator has complied with the requirements of the charter and ordinances of the city, and the allegation that the duties of the Building Commissioner are purely ministerial, which allegations are denied by respondent. Respondent's return further alleges, in substance, that the decision of respondent to issue the permit did not entitle the relator thereto; that the relator's property was subject to restrictions of record prohibiting its use for a gasoline filling station; that said restrictions inure to the benefit of all lot owners in the subdivision of which relator's lot is a part; and that the objecting third parties are owners of lots in said subdivision; and that the relator is not lawfully entitled to have said permit issued, or to use said lots for the erection of a gasoline filling station thereon.

Respondent's return further alleges that, on October 10, 1935, the North Hampton Realty Company, then owner of all the lots in all the blocks of the subdivision of Northampton, according to the plat thereof recorded on October 1, 1925, in Plat Book 21, p. 119, in the office of the Recorder of Deeds in and for the City of St. Louis, executed and acknowledged a certain declaration as to restrictions in said North Hampton Subdivision, among which restrictions was one numbered six, reading as follows:

"No lot or subdivision of any lot in this subdivision shall be used

for the purpose of a gasoline filling station or the storage and sale of gasoline, except Lot 10 in Block 1. . . .

"The foregoing conditions and restrictions to remain in force for twenty years from January 1, 1926."

Respondent's return further alleges that there was and is in force in said city Article II of Chapter VII of the Revised Code of St. Louis, 1926, comprising Sections 152 to 176, inclusive, a zoning ordinance which divides the city into use districts and regulates the erection, construction, reconstruction, alteration, or use of building structures and land therein; and that, by Section 172 of said ordinance, it is provided that the restrictions imposed by said ordinance upon the use of land and structures are the minimum restrictions which it is the duty of the officers of the city to enforce; and that it is not the intention of said ordinance that the restrictions imposed thereby shall interfere with or abrogate or annul restrictions of record; and that it is the intent and purpose of said ordinance that the use of land for structures which are prohibited by restrictions of record shall be unlawful. Section 172 of said ordinance above referred to is set forth in full in respondent's return.

Respondent's return further alleges that the alternative writ of *mandamus* was improperly issued because relator's petition did not disclose the existence of said building restriction and Section 172 of the Revised Code of the City of St. Louis for 1926; and prayed that the peremptory writ be denied and that the alternative writ be quashed.

Section 172 of the Revised Code of St. Louis, 1926, provides as follows:

"In interpreting and applying the provisions of this ordinance, they shall be held to be the minimun requirements for the promotion of the public safety, health, convenience, comfort, prosperity, and general welfare. It is not the intention of this ordinance to interfere with or abrogate or annul any easements, convenants or other agreement between parties; provided, however, that where this ordinance imposes a greater restriction upon the use of building or premises or upon height of building, or requires larger open spaces than are imposed or required by other ordinances, rules, regulations, or permits, or by easements, convenants or agreements, the provisions of this ordinance shall govern."

As stated in respondent's brief, there was no controversy over the facts, and the cause was submitted by the parties to the trial court on the pleadings which we have referred to. Respondent states that the issues to be determined are whether the restrictions of record became a part of the zoning ordinance because of section 172 of the Revised Code; and, if not, whether the trial court abused its discretion in ordering the issuance of its peremptory writ of *mandamus* commanding respondent, as Building Commissioner, to issue a building

permit for the erection of a gasoline filling station on a lot which relator had no lawful right to use for that purpose.

Respondent contends that ordinances should be construed to give effect to the legislative intent; and that when the zoning ordinance involved herein is so construed, the restrictions of record on the property involved, being more stringent than the ordinance, become the maximum requirement which must be observed. In support of this contention respondent urges that *mandamus* does not lie to compel the issuance of a permit for a building to be used in violation of the zoning ordinance, and cites State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720. We think the case of State ex rel. Oliver Cadillac Co., *supra,* is clearly distinguishable from the case at bar. That case involved a direct violation of the zoning ordinance itself. The validity of the ordinance was directly attacked by the relator therein, who was seeking a permit for a building which was conceded to be in direct violation of the very terms of the ordinance itself. Final refusal of the permit in that case was not based upon private restrictions of record but was based directly upon the provisions of the ordinance itself. The case at bar does not directly involve the zoning ordinance. Relator herein is not attacking the zoning ordinance at all. The case at bar involves restrictions of record on the property in question, which are merely matters of private contractual rights as between the objecting third parties and the relator herein. Public law is not involved in this case as it was in the Oliver Cadillac Co., case, *supra.*

Respondent points out that relator acquired his land subject to the restrictions of record prohibiting its use for a gasoline filling station. From this respondent argues that, since Section 172 of the Revised Code, which we have heretofore set forth, indicates an intention to make the private restrictions of record the maximum requirement, the Building Commissioner cannot be required to issue a permit for a structure intended for a use which is prohibited by the zoning ordinance. We are unable to agree with respondent's view. Under the pleadings respondent admits that relator has complied with the requirements of the Building Code of the City of St. Louis, which governs the issuance and refusal of permits; and that the only reason for the refusal of the issuance of the permit was the objection of third parties based not upon the zoning ordinance but upon the private restrictions of record heretofore set forth.

Section 3388 of the Building Code (Ordinance No. 36614) provides:

"If the matters mentioned in any application for a permit, or if the plans and specifications accompanying and illustrating the same indicate to the building commissioner that the work to be done is not in all respects in accordance with the provisions of this ordinance, he shall refuse to issue a permit until such applications, plans, and specifications shall have been made to conform in every respect to the re-

quirements hereof, *and when such application and plans and specifications conform thereto the building commissioner shall issue a permit,* and shall file said application, and shall apply to the plans and specifications his official stamp, which shall imply that the plans and specifications to which the same have been applied, comply with the terms of this ordinance. . . ." (Italics ours.)

It will be seen from the foregoing section of the Building Code that, when the application and plans and specifications conform to the requirements thereof and the proper fees have been tendered, there is no discretion allowed to the Building Commissioner, for the language used is "The building commissioner *shall issue a permit,* etc." It is admitted by respondent that relator's application, plans and specifications did conform to the requirements of the ordinance governing issuance of permits; and that the proper fees have been tendered. It seems clear, therefore, that the duty of the Building Commissioner, under such circumstances, is merely a ministerial duty which, under the admitted facts, he has no lawful right to refuse to perform. The general rule on this subject is stated in 38 C. J., p. 744, Section 357, as follows:

"Applying the general rule as to permits, the ministerial duty of acting on an application for a building permit may be enforced by *mandamus*; and in general, where the right to a building permit is made absolute on a showing that the requirements of the statutes or municipal ordinances have been complied with, the duty of boards or officers to issue the permit is ministerial and *mandamus* will issue to compel the performance of this duty."

It is established law that the purpose of *mandamus* is to compel the performance of a ministerial duty which one charged with its performance has refused to perform. While *mandamus* will not lie to correct or control the judgment or discretion of a public officer in matters committed to his care in the ordinary discharge of his official duties, it is nevertheless well established that *mandamus* will lie to compel the performance of mere ministerial acts or duties imposed by law upon a public officer to do a particular act or thing upon the existence of certain facts or conditions being shown, even though the officer be required to exercise judgment before acting. A ministerial act, as applied to a public officer, is an act or thing which he is required to perform by direction of legal authority upon a given state of facts being shown to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case. [State ex rel. Jones et al. v. Cook, 174 Mo. 100, 118, 119, 120, 73 S. W. 489.]

The fact that third parties have made objection to the issuance of the permit requested by relator, and the further fact that there are restrictions of record against the use which relator proposes to make of the property, do not justify the Building Commissioner in

refusing to perform the duty of issuing the permit in view of the fact that all of the requirements of the ordinance governing such permits are admitted to have been complied with by relator. The admission by relator that such restrictions do exist is very far from an admission of their validity, and it is obvious that the Building Commissioner has no authority or power to determine whether or not such restrictions are valid or invalid. Only a court of competent jurisdiction has authority to pass upon that matter. The office of Building Commissioner is clearly not the proper tribunal to pass upon such a judicial question, not to mention any supposed authority to assume that the restrictions are valid merely because the objecting third parties have called them to the attention of that office. Furthermore, the validity or invalidity of the restrictions asserted by the objecting third parties cannot be determined in this suit. Said objectors are not parties to this suit. If such third parties desire to prevent the Building Commissioner from issuing a permit, which his ministerial duty, under the public law governing his office, requires him to issue, they should bring an action so that the rights and obligations of all interested parties can be determined according to the general law governing such matters.

Respondent further contends that, even if it be assumed that the restrictions of record did not become a part of the zoning ordinance, it does not follow that *mandamus* will lie to compel the Building Commissioner to issue a permit to erect a gasoline filling station on a lot which relator has no lawful right to use for that purpose. It is obvious that this contention is based upon the assumption that the restrictions of record are valid and binding upon relator, even though there is no admission or statement to that effect in the record. Respondent argues, however, that, while the courts of this State have never passed upon the question as to whether a permit may be lawfully refused because the erection of a proposed structure is prohibited by restrictions of record, they have recognized the rule that a compliance with the building ordinance is not of itself sufficient to entitle an applicant for a building permit to a writ of *mandamus* to compel the issuance thereof. In support of this contention respondent cites State ex rel. Citizens Elec. Light & Power Co. v. Longfellow, 169 Mo. 109, 69 S. W. 374, and State ex rel. Thomas Cusack v. Shinnick, 208 Mo. App. 284, 232 S. W. 1053.

It is true the court refused to issue the writ in the case of State ex rel. Citizens Elec. Light & Power Co., *supra*, but it is clear from the opinion therein that the reason for the refusal was not because of any recognition by the court of a discretionary power vested in the Building Commissioner, but because the relator therein proposed to do something that was clearly unlawful. The relator in that case sought to compel the Building Commissioner of St. Louis to issue a permit for the erection of a power plant on a lot fronting on the Mississippi

River. The plans and specifications showed that the building was to extend beyond the low-water mark of the river and into the bed thereof, which, of course, the court knew as a matter of law was a part of the public domain. The court, in denying the writ, held that the city could no more grant such use of the public domain to the relator than it could lease the city hall to a citizen for an electric power house, and finally said the courts would not compel a public officer to grant anyone a permit to do an unlawful act.

In the case of State ex rel. Thomas Cusack Co. v. Shinnick, *supra,* cited by respondent, the relator therein applied for a permit to erect a billboard. The facts in the case were that, at the time the permit was applied for, the relator was being prosecuted for erecting the billboard without a permit. The Kansas City Court of Appeals, in reversing the judgment of the circuit court, held that, under such facts, relator did not come into court with clean hands; that the billboard had already been erected without the permit, and the only purpose the issuance of the writ could serve would be to permit the relator therein to do a thing it had already done without the permit and in violation of a city ordinance.

It is clear from the record in this case that we have no such facts here as were presented in either State ex rel. Citizens Elec. Light & Power Co., *supra,* or State ex rel. Thomas Cusack Co., *supra.* There is nothing in the case at bar to show that relator seeks the permit to do something unlawful. The ordinance relied on by respondent herein does not itself declare unlawful the use of the property in question contrary to the private restrictions of record, nor has relator done anything which would warrant a holding that he does not come into court with clean hands. The two cases cited by respondent, which we have discussed above, do not, in our opinion, constitute any authority for a holding such as respondent contends for in the case at bar. We have examined the case of State ex rel. Lyons v. Bank, 174 Mo. App. 589, 163 S. W. 945, cited by respondent, and find nothing therein to authorize a refusal of the permit in the case at bar under the facts herein.

To sustain respondent's contention in this case would be equivalent to saying that the ordinance relied upon by respondent has the effect of conferring upon the Building Commissioner of the City of St. Louis the State's judicial power to pass upon and determine controversies between parties arising out of private contractual relations called restrictions of record. It is readily perceivable that the determination of the rights of parties involved in such restrictions might require careful inquiry into many questions of fact and of law, in which all the parties having any interest would be entitled to their day in court. It seems clear that this situation was in the minds of the city's legislators when they drew the ordinance relied upon by respondent, for that ordinance was not made a part of the Building

Code which governs the issuance and refusal of permits for the erection of buildings and does not provide for the powers and duties of the Building Commissioner, as does the Building Code, which clearly leaves no discretion in the Building Commissioner with respect to the issuance of a permit when the terms and conditions of said Code are shown to have been complied with.

Even the solemn belief and conviction on the part of such a public officer as the Secretary of State that a statute prescribing certain ministerial duties to be performed by him was unconstitutional has been held by our Supreme Court to be no defense for the refusal of such officer to perform the duties prescribed. That court held that to permit such a ministerial officer to raise such questions in a *mandamus* proceeding, instituted for the purpose of compelling him to perform his ministerial duties, would lead to delays and endless confusion in the administration of the law. [State ex rel. Chicago, R. I. & P. Ry. Co. v. Becker, 328 Mo. 541, 41 S. W. (2d) 188.] So, in such a case as the one at bar, we may say it would lead to endless confusion to hold that the Building Commissioner may justify his refusal to perform his ministerial duty under the admitted facts in this case merely because objecting third parties have called his attention to private restrictions of record.

The granting of the permit sought by relator will not interfere with the right of the objecting third parties to bring such action as they may think proper to have all questions as to the validity of the restrictions determined. Such questions must be determined not by assumption either by the Building Commissioner or by any court, but by proper procedure on issues made up for that purpose in a court having competent jurisdiction of the subject-matter and jurisdiction of all the parties in interest.

The judgment of the Circuit Court awarding the peremptory writ of *mandamus* is affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur.