**Melvyn CURDT and Norma Curdt, His Wife, Appellants,**

v.

**MISSOURI CLEAN WATER COMMISSION and Terre Du Lac Utilities, Inc., Respondents.**

**No. 40263.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 14, 1979.

Dennis E. McIntosh, Medley, Alexander & McIntosh, Farmington, for appellants.

Jerry B. Schnapp, Schnapp, Graham & Reid, Fredericktown, for Terre Du Lac Utilities, Inc.

Frank J. Murphy, Asst. Atty. Gen., John D. Ashcroft, Atty. Gen., Jefferson, for Missouri Clean Water Commission.

SATZ, Judge.

This cause was tried before the trial court without a jury. There is no dispute as to the facts.

Pursuant to the Missouri Clean Water Law, Ch. 204, RSMo (1973), respondent, Terre Du Lac Utilities, Inc., (Terre Du Lac), applied to co-respondent, Missouri Clean Water Commission (Commission), for a permit to operate a water purification lagoon. As an interested party, appellants, Melvyn Curdt and Norma Curdt (Curdts), were permitted to appear at the hearing before the Commission, and, over the Curdts' objections, the Commission granted Terre Du Lac its permit.

The Curdts duly filed a Petition for Review of the Commission's Order, and all parties stipulated to the record which would be before the trial court for its review.[1] The pertinent facts are that the "wastewater" being discharged from Terre Du Lac's lagoon is clean and not polluted. The water is discharged into a surface watercourse on real estate belonging to Terre Du Lac, continues across that property into a surface watercourse on real estate belonging to the Curdts and then flows into a pond on the Curdts' property. The water discharged from the lagoon into the watercourses does not exceed the natural capacity and stays within the confines of the watercourses. Terre Du Lac does not have a written easement across the Curdts' real estate.

The Curdts contend the Commission acted arbitrarily by refusing to consider whether their riparian rights were violated by the flow of the discharged water onto their property. We do not agree.

■ The primary purpose of the Missouri Clean Water Law is to insure high water quality and a minimum degradation of the waters of this state, § 204.011 RSMo (1973).

---

1. There is no question that the parties stipulated to the record before the trial court, apparently, pursuant to § 536.130.1(1) RSMo, "Administrative Procedure and Review". These stipulated facts are sufficient to define the relevant issues now before this Court. However, in their briefs, the parties refer to additional facts which are not within their stipulation. Since these latter facts neither change nor affect the resolution of the issues, we consider only the stipulated facts.

The Missouri Clean Water Commission is the administrative agency charged with administering, enforcing and promoting the goals of this Law, § 204.021 and § 204.026, RSMo (1973). Like other administrative agencies, the Commission has only those powers which the legislature has expressly or impliedly conferred. *Soars v. Soars-Lovelace, Inc.*, 346 Mo. 710, 142 S.W.2d 866, 871 (1940); *Wright v. Board of Education*, 295 Mo. 466, 246 S.W. 43, 45 (1922); *State Board of Reg. for Healing Arts v. Masters*, 512 S.W.2d 150, 161 (Mo.App.1974).

■ The statutory provisions of the Missouri Clean Water Law do not explicitly grant the Commission the power to determine riparian rights. Moreover, these provisions do not impliedly grant this power. For example, a clarification of the respective rights and duties of a lagoon owner and an adjacent property owner would not affect, and, thus could not facilitate the Commission's required determination of whether the discharged water meets the statutorily defined effluent limitations and water quality standards. Furthermore, determination of the riparian rights of individual landowners would not reveal what impact the discharge would have on water quality and, thus, could not serve to insure minimum water quality degradation in this state.

The Curdts, however, find implied authority for the Commission to determine private riparian rights in § 204.026 RSMo (1973), which provides that:

"The commission shall:

.        .        .        .        .

14. Require proper maintenance and operation of treatment facilities and sewer systems and proper disposal of residual waste from all such facilities and systems;"

The Curdts interpret "proper" as requiring the Commission to determine not only whether Terre Du Lac "properly" complied with the statutorily defined clean water standards but as also requiring the Commission to determine whether Terre Du Lac "properly" complied with the riparian rights of the Curdts, because, the Curdts argue, failure to impose the latter requirement on the Commission would, in effect, allow condemnation of the Curdts' property under the color of a clean water permit.

■ The Curdts misconceive the legal effect of the clean water permit. This permit merely reflects full compliance with the clean water law standards imposed by the Missouri Clean Water Law, § 204.051.3 RSMo (1973). It does not follow that the owner of the permit is thereby exempted from complying with all other decisional and statutory law, ordinances, codes, regulations and the like. To the contrary, specific recognition that the Curdts' existing rights are not abridged by the issuance of a permit is found in § 204.131, RSMo (1973), which provides:

"Nothing in sections 204.006 to 204.141 alters or abridges any right of action now or hereafter existing in law or equity civil or criminal, nor is any provision of sections 204.006 to 204.141 construed as prohibiting any person, as a riparian owner or otherwise, from exercising his rights to suppress nuisances."

Thus, if Terre Du Lac is indeed violating the Curdts' alleged riparian rights, then, Terre Du Lac is not absolved from liability by its clean water permit.

The Curdts' relief, if any, is in the courts, and the Commission had no authority and properly refused to consider this private dispute raised by the Curdts, a third party to the permit proceedings. *See State v. Waddill*, 318 S.W.2d 281, 287 (Mo.1958) and *State v. Welsch*, 124 S.W.2d 636, 639–641 (Mo.App.1939); cf. *State v. Eckhardt*, 322 S.W.2d 903, 908–910 (Mo.1959).

The Curdts also contend that the discharge of Terre Du Lac's effluent onto their property is a tort, and, citing *State v. Longfellow*, 169 Mo. 109, 69 S.W. 374 (1902), the Curdts argue that the Commission cannot permit Terre Du Lac to commit an unlawful act. In the *Longfellow* case a utility applied for a permit to construct a building and the face of the application disclosed the obvious fact that the building would partially lie on public land. In re-

fusing to issue a mandamus to compel the issuance of the building permit, the Supreme Court stated: L.C. 69 S.W. 379

> "The fact that relator asks a permit to erect a private building partly upon the public domain is, in itself, enough to require public officers to refuse the permit, and the courts will not compel any public officer to grant any one a permit to do an unlawful act."

The facts of the *Longfellow* case distinguish it from the instant case. From that case as reported, it is not clear that the utility fully complied with the code the commissioner was authorized to enforce. Moreover, even if the utility had fulfilled the technical requirements of that code, we have held, in a fact situation similar to the instant case, that the distinctive facts of *Longfellow* place it in a unique and different class, because the utility in *Longfellow* proposed to commit an act that was clearly unlawful. *State v. Welsch, supra*, at 640. Comparable to *Welsch* and differing from *Longfellow*, Terre Du Lac's application, in the instant case, is not on its face unlawful but, rather, viewed from the Curdts' perspective, the application would involve complex questions concerning alleged riparian rights and duties of adjacent landowners. Furthermore, in order for the Curdts to make *Longfellow* relevant here, they must interpret *Longfellow* as standing for the principle that an administrative agency is required to consider and determine the propriety of matters outside the scope of its statutory authority. If *Longfellow* were to stand for that peculiar principle, then, we would question its validity.

After the Commission satisfied itself that Terre Du Lac had complied with all provisions of the Missouri Clean Water Law, the Commission properly issued Terre Du Lac its operating permit. Therefore, the judgment of the Circuit Court is affirmed.

DOWD, P. J. and SMITH, J., concur.