The State, ex rel. Gulf Refining Co., *v.* DeFrance et al.

(No. 4465—Decided April 3, 1950.)

*Messrs. Zachman, Boxell & Torbet,* for relator.

*Mr. John J. McCarthy,* director of law, and *Mr. Robert B. Konwin,* for respondents.

Fess, J. This is an action in mandamus, originating in this court, seeking to require the respondents to issue a building permit to relator for the construction of a gasoline service station at the corner of Central avenue and Goddard road in the city of Toledo.

The petition sets forth that relator purchased the premises in question on July 9, 1947, but because of deed restrictions which did not terminate until December 31, 1949, relator did not commence construction of the contemplated station. Prior to January 30, 1950, the lots were situated beyond the limits of the city of Toledo. On January 30, 1950, the Toledo council adopted an ordinance annexing eight different areas of property, among which was included relator's premises. On the same day, pursuant to Sections 4366-8 and 4366-10, General Code, the council enacted ordinance No. 33-50 as an emergency measure to regulate the location of trades and industries, and to regulate and determine setback building lines in the territories newly annexed to the city of Toledo. The ordinance also prescribes penalties for the violation of its provisions. No hearing or notice thereof, as provided by Section 4366-11, General Code, was had prior to the passage of the ordinance.

Section 2 of the ordinance provides:

"Section 2. Use Regulations. Whenever four-fifths (4/5) of the frontage of lots on any street between two intersecting streets contain, at the time of the passage of this Ordinance, structures exclusively residential, no structure shall be built or altered for business or factory purposes therein unless there are on file at the office of the Commissioner of Inspection the written consents of the owners of three-fourths (3/4) of the entire frontage at the time of the issue of the permit."

Relator alleges that its premises front 117 feet on Central avenue and abut (but not front) 140 feet on

Goddard road; and that there are no residential structures on Central avenue between Goddard road and Cheltenham road.

Relator alleges further, in substance, that its plans and specifications were in proper order and in compliance with all lawful rules and regulations, and that its application was rejected by the respondents upon the sole ground that the zoning ordinance, originally enacted in 1923, as amended did not cover relator's premises, and that pending the enactment of a zoning ordinance covering the premises in question respondents "did not wish to take the responsibility of granting said permit."

Relator alleges further that the ordinance was passed without hearing and notice as required by Section 4366-11, General Code; that the ordinance constitutes spot zoning in violation of the Constitution of the United States and the Constitution of Ohio; that the ordinance was passed as an emergency or stopgap measure pending the adoption of a valid zoning ordinance; that it is without reasonable application to the present valid use of property covered thereby; and that it has no uniform application and no reasonable relation to the health, safety, and general welfare of the public, and is void.

So far as the federal and state Constitutions are concerned, it is clear that an Ohio city has the right to adopt a comprehensive zoning ordinance. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016; *Pritz* v. *Messer* (1925), 112 Ohio St., 628, 149 N. E., 30.

Authority for the enactment of zoning ordinances may be derived from a city charter adopted pursuant to Article XVIII of the Constitution, or such ordinances may be enacted pursuant to the provisions of Sections 4366-7 to 4366-12, General Code. The Toledo charter does not specifically enumerate the power

to enact zoning regulations but does provide that the city shall have and exercise all powers granted to cities by the Constitution and laws of Ohio. The authority for the adoption of the ordinance herein involved is therefore derived from the statute rather than from the city charter (*State, ex rel. Fairmount Center Co., v. Arnold, Dir.*, 138 Ohio St., 259, 34 N. E. [2d], 777, 136 A. L. R., 840) and must be in accordance with the provisions of Sections 4366-7 to 4366-11, inclusive, General Code. Under those provisions, no zoning regulations or amendment thereto may be adopted by a city council until after reference to and recommendation by the planning commission. Section 4366-11, General Code, also requires publication of a thirty-day notice and public hearing before the passage of such an ordinance. (It appears from respondent's brief that on January 30, 1950, the same day that the territory was annexed and the emergency ordinance was adopted, the council also adopted ordinance No. 27-50, submitting the proposed change of the zoning maps by the inclusion of the territory annexed to the plan commission. It also adopted ordinance No. 28-50 authorizing notice by publication of a public hearing upon the proposed change on March 8, 1950.)

Relator alleges further that the premises in question front 117 feet on Central avenue and have a depth of 140 feet abutting, but not fronting, on Goddard road, and that there are no residential structures or residential uses whatever made of any of the property or frontage within the block on Central avenue upon which the premises are situated. Construing this allegation in favor of the pleader indicates that the premises in question are excepted from the ordinance by the provisions of section 2 thereof. There is a distinction between "fronting" and "abutting." *Haviland* v. *City of Columbus*, 50 Ohio St., 471, 34 N.

E., 679. Whether a lot abuts or fronts may be a question of fact, but since relator alleges the premises abut, but do not front, on Goddard road, the allegation, for the purpose of the demurrer, must be regarded as true.

On several counts the petition states a good cause of action:

1. The refusal of the permit pending the enactment of a zoning ordinance was arbitrary. *State, ex rel. Gaede,* v. *Guion, Commr. of Bldgs.,* 117 Ohio St., 327, 158 N. E., 748; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Inspector of Bldgs.,* 120 Ohio St., 352, 166 N. E., 228.

2. The "stopgap" ordinance was passed without notice and hearing in violation of Section 4366-11, General Code, and is invalid.

3. Under section 2 of the ordinance it had no application to relator's property.

In overruling the demurrer, it is unnecessary to determine the constitutional questions raised. In its brief relator asks that upon the overruling of the demurrer the writ should be made final. Section 12288, General Code, provides that when the right to require the performance of the act is clear and it is apparent that no valid excuse can be given for not doing it, a court, in the first instance, may allow a peremptory writ of mandamus. But a peremptory writ should issue only when the material facts are admitted which disclose that the relator is entitled to relief as a matter of fact as well as of law.

The demurrer is therefore overruled with leave to the respondents to answer on or before April 7, 1950.

*Demurrer overruled.*

CONN and CARPENTER, JJ., concur.