THE STATE, EX REL. GULF REFINING CO., *v.*
DEFRANCE ET AL.

(No. 4465—Decided May 8, 1950.)

*Messrs. Zachman, Boxell & Torbet,* for relator.
*Mr. John J. McCarthy,* director of law, and *Mr. Robert B. Konwin,* for respondents.

FESS, J. This is an action in mandamus, originating in this court, seeking to require the respondents to issue a building permit to relator for the construction of a gasoline service station at the corner of Central avenue and Goddard road in the city of Toledo.

The demurrer to the petition having been overruled, respondents filed their answer herein, to which the relator filed a reply and then moved for judgment on the pleadings.

The salient facts admitted by the pleadings are as follows:

Relator purchased the premises in question on July 9, 1947, but because of deed restrictions which did not expire until December 31, 1949, did not commence construction of the contemplated service station. Prior to January 30, 1950, the territory in which the lots were situated was beyond the limits of the city of Toledo, but on January 30, 1950, by ordinance of council, the territory was annexed to the city.

On January 30, 1950, pursuant to Sections 4366-8 and 4366-10, General Code, the Toledo council adopted ordinance No. 33-50 as an emergency measure to regulate the location of trades and industries, to regulate and determine setback building lines and to prescribe penalties for the violation of its provisions within the territories newly annexed to the city of Toledo. No hearing or notice thereof, as provided by Section 4366-11, General Code, was had prior to the passage of the ordinance.

On the same day, the council passed resolution No. 27-50, submitting to the city planning commission a proposed change in zoning maps by including thereon classification of property annexed, and also resolution No. 28-50 authorizing notice by publication of a public hearing to be held March 8, 1950, on a proposed ordinance to change the zoning maps.

In its petition relator alleges in substance that its plans and specifications were in proper order and in compliance with all lawful rules and regulations and that its application for a building permit filed March 7, 1950, was rejected by the respondents upon the sole ground that the zoning ordinance, originally enacted in 1923, as amended did not cover relator's premises and that pending the enactment of a zoning ordinance, covering the premises in question, respondents "did not wish to take the responsibility of granting said permit." Respondents' answer does not admit this allegation, but it is conceded that the granting of the permit was refused, and that no objection was made to the plans and specifications.

The petition alleges further that ordinance No. 33-50 was passed without hearing and notice as required by Section 4366-11, General Code; that the ordinance constitutes spot zoning in violation of the Constitution of the United States and the Constitution of Ohio; that the ordinance was passed as an emergency or

stopgap measure pending the adoption of a valid zoning ordinance; that it is without reasonable application to the present valid use of property covered thereby; and that it has no uniform application and no reasonable relation to the health, safety, and general welfare of the public and is void.

So far as the federal and state Constitutions are concerned, it is clear that an Ohio city has the right to adopt a comprehensive zoning ordinance. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016; *Pritz* v. *Messer* (1925), 112 Ohio St., 628, 149 N. E., 30. In the latter case a majority of the court were of the opinion that a municipality is doubly empowered to enact zoning legislation, having been given such authority both by the Legislature and the Constitution.

In our opinion overruling the demurrer, we stated that authority for the enactment of zoning ordinances may be derived from the city charter adopted pursuant to Article XVIII of the Constitution, or that such ordinances may be enacted pursuant to the provisions of Sections 4366-7 to 4366-12, General Code. A more exhaustive examination of the authorities, however, reveals that this conclusion may not be altogether accurate. Under Section 3 of Article XVIII of the Constitution all municipalities, whether charter or noncharter, have authority to exercise all powers of local self-government and also to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with general laws. Under Section 7 of Article XVIII, any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3, exercise thereunder all powers of local self-government. Authority to exercise such powers of local self-government is derived directly from the Constitution.

*Village of Perrysburg* v. *Ridgeway, a Taxpayer,* 108 Ohio St., 245, 140 N. E., 595; *Village of Struthers* v. *Sokol,* 108 Ohio St., 263, 140 N. E., 519; *Wilson* v. *City of Zanesville,* 130 Ohio St., 286, 199 N. E., 187; *City of Cleveland* v. *Terrill,* 149 Ohio St., 532, 80 N. E. (2d), 115.

The powers granted by the Constitution may be exercised by a municipality without a charter. A charter is adopted by the people of a municipality pursuant to the Constitution, and, subject to such limitations as may be provided therein and to the limitation in Section 3 that certain powers—police, etc.—shall not be exercised in conflict with general laws, the charter limits, governs, and controls the council very much the same as the Constitution limits, governs, and controls the General Assembly. *Bauman* v. *State, ex rel. Underwood, Dir. of Law,* 122 Ohio St., 269, 171 N. E., 336. It would seem that upon the adoption of a charter, the power granted to municipalities under the Constitution should be then exercised under the provisions of the charter rather than directly under Section 3 of Article XVIII of the Constitution; and that a charter city thus becomes an *imperium in imperio.* Nevertheless, it appears that the council of a charter city, in the absence of an enumerated power in the charter, may exercise an unenumerated power directly under Section 3. A distinction is to be drawn, however, between the powers of a municipality under the Constitution and the *manner* of the exercise of such powers. All proper powers are derived from the Constitution either with or without a charter. But such powers are to be exercised in the manner prescribed by the Constitution, by the charter, by general laws, or by ordinance.

In *Bauman* v. *State, ex rel. Underwood, supra,* the issue was whether the Akron council, by a majority

vote, could amend a zoning ordinance, notwithstanding the fact that the planning commission refused to approve such amendment, and the further fact that the original zoning ordinance provided that it could be amended only by a three-fourths vote when the amendment had not been approved by the planning commission. The court held that the council could not divest itself of the power conferred upon it by charter to enact legislation by a majority vote.

The court in the *Bauman case* held also that Section 4366-12, General Code, yields unrestricted powers to municipalities in respect to zoning, *if such powers are granted by the municipal charter,* and that the Akron charter conferred upon its council full and complete power to enact and amend any zoning ordinance by a majority vote.

In *State, ex rel. Fairmount Center Co.,* v. *Arnold, Dir. of Service* (1941), 138 Ohio St., 258, 34 N. E. (2d), 777, 136 A. L. R., 840, the Supreme Court held that a municipal council, acting under Sections 4366-7 to 4366-11, General Code, may not amend or change the number, shape, area, or regulations of, or within, any zoning district without following the procedure provided for in Section 4366-11, General Code. The charter in this case was quite different from the Akron charter. It provided, *inter alia*:

"There are hereby reserved to the city of Shaker Heights all powers, general or special, governmental or proprietary, which may now or hereafter lawfully be possessed or exercised by any municipal corporation of Ohio. No enumeration herein of specific powers shall be held to be exclusive.

"The powers of this city may be exercised in the manner prescribed in this charter, or, to the extent that the manner is not prescribed herein, in such manner as the council may prescribe. *The powers of the*

*city may also be exercised, except as a contrary in-
tent appears in this charter or in the enactments of
the council conformably thereto, in such manner as
may now or hereafter be provided* by the general law
of Ohio.'' (Italics from Supreme Court opinion.)

Although not referred to in the opinion, the Shaker
Heights charter also provided for a planning commis-
sion with such powers as might be conferred on it by
ordinance of council with respect to zoning of the city
for any lawful purposes and such powers as then or
thereafter might be conferred upon it by ordinance of
the council or the general law of Ohio. In its opinion,
the court said:

''There being no contrary intent in the charter or
in the enactments of council conformably thereto, so
far as the record shows, and council having proceeded
in the enactment of ordinance No. 4708 [the rezoning
ordinance] in accordance with Section 4366-11, General
Code, it is clear that in the matter of zoning, council
was proceeding under the legislative authority of Sec-
tions 4366-7 to 4366-11, General Code. Therefore the
above quoted exception in Section 4366-12, General
Code, is not applicable.''

Section 4366-12, General Code, provides:

''Nothing contained in the foregoing Sections 4366-7
to 4366-11, inclusive, shall be deemed to repeal, re-
duce or modify any power granted by law or charter
to any municipality, council, or other legislative body
of a municipality * * * under Article XVIII of the
Constitution of Ohio.''

The court distinguished the *Bauman case* because
the record showed the proceedings there were under
the Akron charter, which contained ample provision
for the enactment of zoning regulations.

It will be noted, however, that the Shaker Heights
charter reserved to the city all powers which may be

lawfully possessed or exercised by any municipal corporation of Ohio, and that the powers of the city may be exercised also in such manner as may be provided by the general law of Ohio. If the power to enact zoning regulations were derived from the Constitution under the general reservation of all powers lawfully possessed, it would seem that the passage of the zoning act in conflict with the statute would be exempt under that portion of Section 4611-12, General Code, "nor to impair or restrict the power of any municipality under Article XVIII of the Constitution of Ohio." But in the cases involving the Akron and Shaker Heights zoning ordinances, the court holds that Section 4366-12, General Code, yields unrestricted powers to municipalities in respect to zoning, *if such powers are granted by the municipal charter.* See *Bauman* v. *State, ex rel. Underwood, supra,* and *State, ex rel. Fairmount Center Co.,* v. *Arnold, supra.*

It is the contention of the respondents that the Toledo charter, in Section 8, specifically provides for zoning regulations. We find no such specifically enumerated powers in the Toledo charter. It is contended further that authority for the enactment of zoning regulations is found in Section 10, reading as follows:

"Sec. 10. Enumeration not Exclusive. The enumeration of particular powers by this charter shall not be held or deemed to be exclusive; but in addition to the powers enumerated or implied therein or appropriate to the exercise thereof, the city of Toledo shall have and may exercise all other powers which under the constitution and laws of Ohio now are, or hereafter may be, granted to cities. Powers proper to be exercised and not specially enumerated herein, shall be exercised and enforced in the manner prescribed by this charter; or, when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council, or by statute."

Although the phraseology is different, the unenumerated powers of the city of Toledo are to be exercised in the same manner as those of the city of Shaker Heights, namely, (a) as prescribed by the charter, (b) as provided by council, or (c) by statute.

The Toledo charter provides also for a planning commission but its duties are confined to municipal planning and no specific power to zone is provided.

As in the Shaker Heights case, the question here presented turns upon whether the council of Toledo attempted to proceed under the charter or under the statute. The title of ordinance No. 33-50 refers to Sections 4366-8 and 4366-10, General Code, but no reference to such sections is made in the body of the ordinance and the title must be disregarded. However in enacting resolutions Nos. 27-50 and 28-50, the council was complying with the provisions of Sections 4366-7 to 4366-11, General Code. In the absence of specific power to zone in the charter, it is apparent that the city council was proceeding under the statute rather than under an unenumerated power derived from the Constitution. Such procedure brings the enactment of ordinance No. 33-50 squarely within the facts as well as the law of the *Fairmount Center Co. case.* We therefore hold that ordinance No. 33-50 is invalid and that relator is entitled to a peremptory writ of mandamus.

Upon the admitted facts in the pleadings, relator is likewise entitled to its writ upon another ground. Section 2 of ordinance No. 33-50 provides:

"Section 2. Use Regulations. Whenever four-fifths (4/5) of the frontage of lots on any street between two intersecting streets contain, at the time of the passage of this ordinance, structures exclusively residential, no structure shall be built or altered for business or factory purposes therein unless there are on file at the office of the commissioner of inspection

the written consents of the owners of three-fourths (3/4) of the entire frontage at the time of the issue of the permit.''

Attached to respondents' answer and made a part thereof is exhibit ''G'' containing a plat of the territory in question which shows that relator's lots abut breadthwise on Central avenue between Goddard and Cheltenham roads and that there are no residential structures on either side of Central avenue between such roads. One of relator's lots abuts 67 feet on Central avenue and 119.23 feet on Goddard road. Respondents contend that the word ''frontage'' as used in section 2 of the ordinance should include frontage on Goddard road and exclude frontage on Central avenue; and that more than four-fifths of the frontage of lots on Goddard road between Central avenue and Hughes drive contains structures exclusively residential. This is disputed by the relator, which contends that less than four-fifths of the lots on Goddard road between such intersecting streets contains residential structures. This presents a question of fact which the court can not determine upon a motion for judgment on the pleadings.

However, we construe the term ''frontage'' as used in section 2 of the ordinance as having its ordinary meaning, that is, normally a lot fronts breadthwise and not lengthwise. In *Haviland* v. *City of Columbus,* 50 Ohio St., 471, 34 N. E., 679, the court made a distinction between fronting and abutting. In *City of Toledo* v. *Sheill,* 53 Ohio St., 447, 42 N. E., 323, 30 L. R. A., 598, the court said, as shown by the first paragraph of the syllabus:

''Where the boundary lines of a corner lot extend along one of its two abutting streets a materially greater distance than along the other, a presumption arises that it fronts upon the latter street.''

These cases arose under Section 3812, General Code, providing for the assessment of street improvements "by the foot front of the property bounding and abutting on the improvement." The court held that a corner lot abutting lengthwise on the improved street should be assessed according to its breadth and not its length of footage. These cases were specifically overruled in *City of Youngstown* v. *Fishel,* 89 Ohio St., 247, 104 N. E., 141, but the later case did not overrule the definition of the word "front." Ordinances which restrain the exercise of an owner of the use of his premises or impose restrictions upon the use of private property are to be strictly construed, and the scope of such ordinance can not be extended to include limitations not therein clearly prescribed. *State, ex rel. Moore Oil Co.,* v. *Dauben, Bldg. Inspector,* 99 Ohio St., 406, 124 N. E., 232; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Inspector of Bldgs.,* 120 Ohio St., 352, 166 N. E., 228.

We therefore find on the pleadings that the phrase "frontage of lots on any street between two intersecting streets" as applied to the instant case refers to the frontage of the lots on Central avenue and does not include the lots on Goddard road, along which relator's lot extends lengthwise.

Respondents have moved for leave to file an answer setting forth: (1) The council of the city of Toledo at its session on April 24, 1950, repealed ordinance 33-50 and (2) the council of the city of Toledo at its session on April 24, 1950, enacted permanent zoning of relator's premises after due notice and hearing and upon the recommendation of the planning commission.

This action having been instituted on March 10, 1950, the question presented is whether the relator was then entitled to the writ of mandamus prayed for. Any action thereafter taken by the municipal authorities

cannot serve to defeat that right or affect the jurisdiction of the court to grant the remedy to which the relator was then entitled. *Hauser, Commr. of Bldgs., v. State, ex rel. Erdman,* 113 Ohio St., 662, 150 N. E., 42; *State, ex rel. Gaede,* v. *Guion, Commr. of Bldgs.,* 117 Ohio St., 327, 158 N. E., 748; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Inspector of Bldgs., supra; Bauman* v. *State, ex rel. Underwood, Director of Law, supra; State, ex rel. Fairmount Center Co.,* v. *Arnold, Dir. of Service, supra.*

The fact that the council may have repealed ordinance No. 33-50 and enacted a permanent zoning ordinance is therefore immaterial, and not a defense to relator's right to relief. The application to amend will therefore be denied.

In view of the foregoing, we conclude that relator's right to require the issuance of the permit is clear and it is apparent that no valid excuse can be given for not doing it, and that therefore the peremptory writ should issue.

*Writ allowed.*

Conn and Carpenter, JJ., concur.