STATE of Missouri at the relation of James Milford SIMS, Appellant,

v.

Willard L. ECKHARDT, O. R. Johnson, Harry Gentry, Fred T. Kennedy, and Paul D. Higday, being the duly appointed members of the Board of Zoning Adjustment of the City of Columbia, Missouri, a municipal corporation, Respondents,

Neal Primm, Intervenor-Respondent.

No. 46264.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

904

Carl F. Sapp, Orr & Sapp, Columbia, for appellant.

J. Robert Tull, Columbia, for respondents.

BOHLING, Commissioner.

This is an appeal by relator, James Milford Sims, from a judgment of the Circuit Court of Boone County affirming the revocation by the Board of Adjustment of the City of Columbia of a building permit issued to appellant by the City Director of Public Works.

Appellant contends he has spent more than $9,000 in construction on the property involved and that will be lost if his building permit is revoked. The record shows the money value of the relief to appellant exceeds $7,500 and this court has jurisdiction. Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8 [1].

In July, 1955, appellant became the owner of and has since owned Lot 4 of Eastwood Hills Subdivision, a subdivision then located outside the limits of the City of Columbia.

The City, proceeding under §§ 89.010 to 89.140, also known as the Enabling Act (Laws 1925, p. 307), had adopted a comprehensive zoning plan for the area within its corporate limits. (Statutory references are to R.S.Mo.1949 and V.A.M.S.)

A proposal to extend the corporate limits of the City and annex approximately 2,500 acres of land, including appellant's said lot, was to be voted upon December 15, 1955. Anticipating the approval of the annexation, an ordinance, known in the record as § 8.1, to amend the comprehensive zoning ordinance was introduced in the City Council November 7, 1955. It provided that all new territory whenever incorporated within the City should automatically be zoned in District A, which was restricted to dwellings designed for not more than two families. The minutes of the City Council recited that the proposed ordinance "was introduced, read and held for further consideration. The Council directed that this bill be referred to the Planning and Zoning Commission and that a public hearing thereon be held December 5th next and the Clerk directed to advertise the same."

A notice of a hearing on proposed "Section 8.1," setting it out, before the City Council at 7:00 p. m. December 5, 1955, was published. We quote the section:

"Section 8.1. Zoning of Annexed Areas. Whenever additional areas of land are annexed and incorporated within the corporate boundaries of the city as provided by law, such areas of land at the time of the effecitve date of said annexation and incorporation shall come into the classification of District A, First Dwelling District, subject to all of the provisions of this chapter, and the Zoning District Map shall be changed to show such additions thereto."

A called special meeting of the City's Planning and Zoning Commission, also referred to as the Zoning Commission, was held November 28, 1955, at the office of the City Director of Public Works. This meeting lasted about thirty minutes, and a motion was adopted recommending that Article 2 of Chapter 19 of the zoning ordinance be amended by adding § 8.1 thereto. By letter dated December 1, 1955, the Secretary of the Zoning Commission advised the City Council of this recommendation of the Zoning Commission.

No one appeared at the Council meeting in opposition to said § 8.1, and § 8.1 was twice read, put upon final passage, and adopted by the City Council on December 5, 1955.

The proposed annexation carried at the election on December 15, 1955, and the result of the vote was certified to the City Council on December 19, 1955.

On July 18, 1956, the City Director of Public Works issued a building permit to appellant for a four-family dwelling on said Lot 4. Section 8.1 above, if valid, by placing appellant's lot in District A, limited buildings thereon to one- and two-family dwellings. Appellant commenced actual construction in November, 1956. December 5, 1956, eighteen lot owners served a written demand on the City Director of Public Works that the building permit issued to appellant be revoked, stating their grounds therefor. This demand was denied and an appeal was taken to the Board of Adjustment. The Board of Adjustment, following a hearing, sustained the contentions of the protesting lot owners and re-

voked and cancelled the building permit issued to appellant on the ground the construction of a four-family dwelling on said Lot 4 was in violation of § 8.1 of the zoning ordinance, and was also in violation of a recorded restrictive covenant against said Lot 4.

Appellant thereupon timely instituted this review proceeding under § 89.110.

■■ Zoning ordinances operate locally, but they constitute the exercise of a governmental function referable to the police power. Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15 [4]; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411. A city is the creature of the State and has no inherent police power. Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 73 [8]; City of Meadville v. Caselman, 240 Mo.App. 1220, 227 S.W.2d 77, 79 [1, 2].

We stated in State ex rel. Kramer v. Schwartz, 336 Mo. 932, 939 [1], 82 S.W.2d 63, 66 [1]: "We think it clear upon elementary principles that the Enabling Act of 1925 [now §§ 89.010 to 89.140], properly interpreted, must be treated as the measure of the power of * * * [a municipality] to pass a valid zoning ordinance. The Enabling Act is a grant of a portion of the state's police power, and the extent of the powers granted as well as the manner of their exercise must conform to the terms of the grant." See also 8 McQuillin, Municipal Corporations, 3d Ed., § 25.58, n. 49.

We consider the issues as presented.

■ Appellant's first contention is that § 8.1 is invalid, having been enacted in violation of § 89.070, quoted infra.

We find no authority conferred upon boards of adjustment to repeal or to hold invalid the provisions of the ordinances they are called upon to administer; and the ruling of the Board of Adjustment at the instant hearing to the effect it would proceed on the basis of the validity of the

ordinances was sound. Adams v. Board of Zoning Adjustment, Mo.App., 241 S.W.2d 35, 38; Phillips v. Board of Adjustment, Mo.App., 308 S.W.2d 765, 768; Baddour v. City of Long Beach, 279 N.Y. 167, 18 N.E.2d 18 [16], 124 A.L.R. 1003.

Respondents contend § 89.070 applies only to the enactment of an original zoning ordinance; that § 8.1 amended the original zoning ordinance of the City, and that §§ 89.060 and 89.050 apply. Section 89.050 is general in nature and directs municipal legislative bodies to provide for the manner in which zoning regulations, restrictions and boundaries shall be determined, established, and enforced, "and * * * from time to time amended, supplemented or changed," and also provides that no such regulation, restriction or boundary shall become effective until following a public hearing held after at least fifteen days' notice. The record does not disclose what procedure the ordinances of the City of Columbia provide pursuant to § 89.050.

Section 89.060 treats specifically of amendments and, as far as here involved, provides: "Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. * * * The provisions of section 89.050 relative to public hearings and official notice shall apply equally to all changes or amendments."

Respondents stress Geneva Inv. Co. v. City of St. Louis, 8 Cir., 87 F.2d 83, and State ex rel. Luechtefeld v. Arnold, Mo.App., 149 S.W.2d 384. Neither case is determinative here. Each involved a change or a purported change of a zoning classification of property in a district within the corporate boundaries subject to an existing valid comprehensive zoning ordinance. There was no justiciable controversy in either case respecting zoning provisions affecting newly annexed areas or areas outside the corporate limits of the municipality. In respondents' cited case of City of Highland Park v. Calder, 269 Ill.App. 255, 262, the court stated that a

stipulation entered into by counsel precluded the landowners from asserting the zoning ordinances were not properly passed and, therefore, were invalid.

We find no express provision in §§ 89.010 to 89.140 for a municipality having a comprehensive zoning ordinance to extend zoning regulations into newly annexed territory, and apparently the precise question presented here has not been ruled by an appellate court of this State. The provisions in §§ 89.050 and 89.060 for amending, supplementing, changing, modifying or repealing relate to the amendment, change or repeal of an existing regulation, restriction or boundary. The record discloses no attempt by the City of Columbia to establish any regulations, restrictions or districts under the zoning law for newly annexed territory prior to the adoption of § 8.1 here involved.

On the other hand, § 89.070 relates to "original districts" and provides: "In order to avail itself of the powers conferred by sections 89.010 to 89.140, such legislative body shall appoint a commission, to be known as 'The Zoning Commission,' to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission. Where a city plan commission already exists, it may be appointed as the zoning commission."

The requirement of § 89.070 that the municipal legislative body "shall not hold its public hearings or take action until it has received the final report of" the zoning commission was held mandatory in State ex rel. Kramer v. Schwartz, 336 Mo. 932, 82 S.W.2d 63, 67 [2], also stating (loc. cit. 68 [5]) that if the mandatory provisions of the statute are too rigid, the defects should be remedied by the Legislature and cannot be cured by the courts. It has also been held that the requirements of §§ 89.060 and 89.050 for notice and a hearing are mandatory and necessary to the validity of an amending ordinance. Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411 [5]. By a parity of reasoning the requirements of § 89.070 that the zoning commission "shall make a preliminary report and hold public hearings thereon before submitting its final report" are mandatory.

The statutory requirements placed upon the zoning commission and the municipal legislative body by § 89.070 (we do not repeat them here) are conditions to the exercise of the powers conferred by §§ 89.010 to 89.140, to secure careful, serious and intelligent consideration in the preparation of a comprehensive zoning ordinance for the stated purposes of the law (§§ 89.020, 89.040), and to protect property owners and others from arbitrary and unreasonable regulations, restrictions and district boundaries. Taylor v. Schlemmer, 353 Mo. 687, 183 S.W.2d 913, 914 [4]; Schell v. Kansas City, 360 Mo. 27, 226 S.W.2d 718, 720. The statutes contemplate that zoning regulations, restrictions and districts be well planned, and that they be of a more or less permanent nature and subject to change only to meet genuine changes in conditions. Kracke v. Weinberg, 197 Md. 339, 79 A.2d 387 [6].

The term "original districts" in the first sentence of § 89.070 logically refers to the establishment of districts for zoning purposes in any area not previously zoned by a city; and the Legislature, by the other provisions of § 89.070, has established definite limitations on cities for the exercise of the delegated powers to establish original zoning districts and restrictions within the city, and the reasons therefor are equally applicable to the establishment of zoning districts and restrictions in newly annexed territory.

In the instant case there was no attempt to comply with the provisions of § 89.070 in the enactment of § 8.1 here involved. It follows that said § 8.1 imposed no restric-

tion on the use of appellant's land, and we need not consider the other attacks against the validity of § 8.1.

We do not rule the issue whether a municipality may enact a valid ordinance containing reasonable interim provisions with respect to zoning regulations to be effective in an area when subsequently taken into the city until such time as permanent zoning regulations may be duly enacted in compliance with § 89.070 for the newly annexed territory. Such temporary or interim ordinances have received approval. See City of Dallas v. Meserole, Tex.Civ.App., 155 S.W.2d 1019 (where the newly annexed territory came into the city under a law authorizing a majority of the legal voters resident on the land to petition the city for annexation); City of Dallas v. Meserole Bros., Tex.Civ.App., 164 S.W.2d 564; Annotation, 41 A.L.R.2d 1463. In some jurisdictions such interim zoning ordinances have not met with approval. State ex rel. Gulf Refining Co. v. De France, 89 Ohio App. 1, 100 N.E.2d 689; State ex rel. Gulf Refining Co. v. De France, 89 Ohio App. 334, 101 N.E.2d 782. In the instant case there is nothing on the face of § 8.1 to the effect it was a temporary or interim measure and in addition, as stated, there was no attempt to comply with § 89.070.

■ The General Assembly may make reasonable provisions for extending the police power of cities over territory adjoining their corporate boundaries (consult Town of Gower v. Agee, 128 Mo.App. 427, 107 S.W. 999 [1, 2]); and it might with propriety do so with respect to interim zoning ordinances.

■ Appellant's Lot 4 was subject to the following covenant or restriction found in the Dedication of the Plat of Eastwood Hills Subdivision: "No building to be used as a dwelling shall be erected on Lots Four (4) to Fifteen (15), both inclusive, that is below the standard of a five-room modern dwelling." The Board of Adjust-

ment revoked appellant's building permit on the additional ground the permit violated said restrictive covenant.

Section 31 of Chapter 19 of the City's comprehensive zoning ordinance provides: "No permit for the erection, alteration or enlargement of any building or structure, or the use thereof, shall be issued by the director of public works, board of adjustment, or any other official, employee, commission or board authorized to grant or modify building permits under the ordinances of the City, if the erection, alteration or enlargement of such building or structure, or the use thereof, be in violation of any recorded covenant, condition or restriction, then in effect, which restricts the type and kind of building or structure, or the value or use thereof, to be erected upon the lot which such building or structure is to, or does, occupy." Our discussion of the issue proceeds on the assumption, without holding, that said restriction would be violated by appellant's constructing a four-family dwelling on Lot 4.

Respondents state they have found no case construing a similar ordinance prohibiting the issuance of building permits which would result in the violation of a recorded restrictive covenant. Respondents cite cases from other jurisdictions, stressing Downey v. City of Sioux City, 208 Iowa 1273, 227 N.W. 125 [6], and Myers v. Fortunato, 12 Del.Ch. 374, 110 A. 847 [1, 2], which they say approved ordinances conditioning the grant of certain building permits on the consent of property owners within a definite area, and argue that "if this can be done, then the prior decision of a subdivider and the subsequent acquiescence of the property owners therein must be considered as expressing their wishes in the matter and is entitled to enforcement by an ordinance of the municipality such as the one in the instant case." The ordinances in respondents' cases prohibited the contemplated construction or use, but then provided that the prohibition could be waived by the property owners

affected thereby. The rulings on the validity of that type of an ordinance are not uniform. See Annotation, 21 A.L.R.2d 551.

State ex rel. Folkers v. Welsch, 235 Mo. App. 15, 124 S.W.2d 636, 640, was a case wherein a building permit was refused because the contemplated construction was in violation of a restrictive covenant running against the land. In holding objections, based on the restrictive covenant of record, of lot owners of the subdivision to the proposed use of the property would not justify the refusal of the permit to an applicant who had complied with all ordinance requirements for the permit, the court stated: "The admission by relator that such restrictions do exist is very far from an admission of their validity, and it is obvious that the Building Commissioner has no authority or power to determine whether or not such restrictions are valid or invalid. Only a court of competent jurisdiction has authority to pass upon that matter. The office of Building Commissioner is clearly not the proper tribunal to pass upon such a judicial question * *."

The Folkers case is distinguishable from the instant case in that no ordinance provision respecting restrictive covenants running with the land was involved in the Folkers case. In City of St. Louis v. Russell, 116 Mo. 248, 22 S.W. 470, 20 L.R.A. 721, an ordinance provided: " 'Sec. 734. No livery, boarding, or sales stables shall be located on any block of ground in St. Louis without the written consent of the owners of one-half of the ground of said block' "; and prohibited the building commissioner from issuing such permits until such consent was filed in his office (22 S.W. loc. cit. 470). The ordinance was held void "because of the delegation of legislative power by the mayor and municipal assembly of the city of St. Louis to the owners of one-half the ground in the block where the livery stable was builded" (Id., 22 S.W. 472). In Hays v. City of Poplar Bluff, Banc, 263 Mo. 516,

173 S.W. 676, 677, L.R.A.1915D, 595, an ordinance prohibiting wooden or combustible buildings within certain limits without the "special permission from the mayor and city council" and providing that such permission should not be granted unless the application therefor be "accompanied by the written consent of all persons owning property within the block in which such proposed building is to be erected or placed" (173 S.W. loc. cit. 677, § 315), was held void because, among other reasons, it "amounts to a delegation of the legislative power of the city to such property owners" (Id., 173 S.W. 680 [4, 5]). State ex rel. Continental Oil Co. v. Waddill, Mo., 318 S.W.2d 281.

The power of municipalities to zone property is vested in the municipal legislative body. State ex rel. Croy v. City of Raytown, Mo.App., 289 S.W.2d 153 [1]; 62 C.J.S. Municipal Corporations § 153, p. 313. "A city cannot delegate its power to make a law, but can make a law delegating a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." Fred Wolferman Bldg. Co. v. General Outdoor Advertising Co., Mo.App., 30 S. W.2d 157, 160 [3]; 62 C.J.S. Municipal Corporations § 154 b, c, p. 316; and with respect to zoning matters, 1 Antieau, Municipal Corporation Law, § 7.03(15); 1 Yokley, Zoning Law and Practice, § 135. The City of Columbia by § 31, quoted supra, purports to delegate to individuals the legislative power to create restrictions on the use of land to be enforced by the City through the exercise of its police power to control the issuance of building permits. The individual, not the City Legislative Body, determines the restrictive covenant. Under the authorities this purported delegation of legislative authority is void. The Board of Adjustment had no legal authority to revoke appellant's building permit on the basis it authorized the construction of a building in violation of the restrictive covenant quoted supra. This ruling has no effect on the right of

interested individuals by a proper action to obtain a determination of all questions as to the validity of the covenant.

The foregoing disposes of the issues presented for review.

The judgment of the circuit court is reversed and the cause is remanded with directions that the ruling of the Board of Adjustment revoking appellant's building permit be reversed.

BARRETT and STOCKARD, C. C., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.