Ronald DAHMAN et al., Plaintiffs-Appellants,

v.

CITY OF BALLWIN, a municipal corporation, et al., Defendants-Respondents.

No. 34185.

Missouri Court of Appeals, St. Louis District.

June 27, 1972.

Motion for Rehearing or to Transfer to Supreme Court Denied July 27, 1972.

Application to Transfer Denied Sept. 11, 1972.

Harold B. Bamburg, St. Louis, for plaintiffs-appellants.

Richard F. Provaznik, St. Louis, for defendants-respondents, City of Ballwin, and others.

Padberg, Raack, McSweeney & Slater, R. J. Slater, St. Louis, for respondent, Parc Renaissance, Inc.

WEIER, Judge.

In this action the plaintiffs sought a declaratory judgment holding the City of Ballwin zoning ordinance No. 736 invalid and enjoining the defendant City of Ballwin and its city officials from issuing building permits which would authorize construction of any dwelling units other than single-family units, on lots not less than 20,000 square feet each, on the land regulated by the ordinance. They also requested that the defendant, Parc Renaissance, Inc., be enjoined from building dwelling units on this property other than in compliance with the minimal zoning standards outlined above.

The land in question is a 78-acre tract of land lying at the northeast corner of the City of Ballwin. This tract of land is completely undeveloped and its topography varies considerably—containing a steep hill on its southern portion, a creek running through it, and many ravines cutting through the terrain joining the creek. But, for the most part, the land is low in elevation and could best be described, as it had previously been designated, as "flood plain."

Prior to its annexation by the City of Ballwin on November 24, 1969, the property was in unincorporated territory and was governed by the zoning regulations of St. Louis County. The county had classified the land Residential–3 and Flood Plain Residential–3. According to the St. Louis County zoning ordinance only single-family residences could be constructed thereon and each residential unit was required to have a minimum lot area of 10,000 square feet.

As a consequence, this zoning classification would allow no more than 283 houses to be erected on this tract of land.

The contemplated annexation of the land by the City of Ballwin began a sequence of events which led to the commencement of this lawsuit. After the annexation proceedings were commenced, the planning and zoning commission of the City of Ballwin was directed to prepare a preliminary report and hold hearings on the subject of zoning this 78-acre tract of land. The preliminary report was issued, recommending that this tract be zoned Residential–2, Single-Family District. This would permit construction of single-family residences only, with a minimum lot requirement of 20,000 square feet. Hearings were then held, pursuant to § 89.070, RSMo 1969, V.A.M.S.[1] (concerning the procedural requirements for acts of original zoning) and a final report of the zoning and planning commission was issued on October 8, 1969, recommending the adoption of the zoning classification as outlined in its preliminary report.

A public hearing was scheduled for October 27, 1969, by the board of aldermen with respect to the zoning classification of the land to be annexed. Prior to this date a protest petition was submitted by the plaintiffs. The record shows that this petition complied with the requirements of § 89.060, in that it contained the signatures of the owners of at least ten per cent of the area of land adjacent to the 78-acre tract. The effect sought by this petition was to require the board of aldermen to secure a three-quarter majority vote to pass any action designated "rezoning." Absent a protest petition, only a simple majority would be required to "zone" or to "rezone." §§ 89.060 and 89.070.

A public hearing was commenced by the board of aldermen on October 27, 1969, continued on November 10, 1969, and terminated on November 24, 1969. After the

hearing, and at the November 24 regular meeting of the board of aldermen, the board adopted Ordinance No. 734, annexing the 78-acre tract of land to the City of Ballwin. Ordinance No. 736 was also introduced and passed by a 4-to-2 vote. This ordinance would classify the newly annexed land as Residential–5, Multiple Dwelling District, and would allow the construction of multiple dwellings on lots requiring an area of only 2,000 square feet per family. The mayor vetoed the measure and the board of aldermen overruled this veto at their December 8 meeting by a 4-to-2 vote.

The plaintiffs commenced their action in the Circuit Court of St. Louis County on December 8, 1969. Although not residents of the City of Ballwin, they owned homes in the Fox Creek Subdivision, a subdivision of single-family residences, lying north of and adjacent to the annexed land.

The trial began on May 18, 1970, and lasted four days. Much testimony was elicited from witnesses whose interest was manifested by their ownership of the adjacent property, from planners, architects, and engineers whose expertise was relevant to the feasibility of a multi-family dwelling complex, and from members of the then existing municipal government who were involved in the legislative process. A substantial portion of the evidence related to the reasonableness of an R–5 zoning classification on the annexed territory. The evidence also established the flexibility of construction permitted on this land under the City of Ballwin ordinance, as opposed to the limited single-family dwellings permitted under the St. Louis County ordinance.

The Circuit Court rendered judgment in favor of the defendants, finding the enactment of Ordinance No. 736 procedurally valid as well as being a valid exercise of the judgment of a "duly constituted legisla-

I. Except section numbers referred to as ordinances and so designated, all other section references are to RSMo 1969, V.A. M.S.

tive body." The plaintiffs appealed from the judgment, contending:

(1) The adoption of Ordinance No. 736 was an act of "rezoning" and thus invalid because it was not passed by the necessary three-quarter majority, as required by § 89.060;

(2) The zoning classification was arbitrary and unreasonable;

(3) The trial judge did not apply the proper test in determining the question of the reasonableness of the ordinance in question.

In regard to the plaintiffs' first argument, their reasoning is twofold. They contend:

(1) that all territory annexed to the city initially is classified as R–1 Single-Family Dwelling Districts and in accordance with Article II, Section 3, Zoning Ordinance of the City of Ballwin, and that any subsequent zoning legislation must be categorized as "rezoning"; and,

(2) that because of the zoning designation placed upon the 78-acre tract by St. Louis County prior to annexation, any subsequent zoning legislation by the City of Ballwin must be categorized as "rezoning."

Zoning ordinances, although operating locally, constitute an exercise of the police power of the state. A city has no inherent police power and must look to the statutes to determine the extent of the power delegated by the state to it. State ex rel. Sims v. Eckhardt, Mo., 322 S.W.2d 903, 906[2, 3]. It has long rested upon elementary principles that the enabling act (§ 89.010 to § 89.140) requires those using the powers delegated to conform to the terms of the grant. State ex rel. Kramer v. Schwartz, 336 Mo. 932, 82 S.W.2d 63, 66[1]. The procedures to be followed in enacting zoning regulations or changing those existing are set forth in §§ 89.050 to 89.070. Provisions for public hearing and official notice are applicable to all zoning legislation. However, two distinctions do exist between an act of original zoning and

changes made to existing regulations: (1) all acts of original zoning must first be submitted to a zoning commission for study, public hearing and a report, (§ 89.-070); and, (2) while all acts of original zoning require a simple majority of the approving legislative body, any change submitted for approval which has been protested by owners of ten per cent of land 185 feet distant from the boundaries of the land to be rezoned requires approval of a three-quarter majority of the legislative body. § 89.060.

Article II, Section 3, of the Zoning Ordinance of the City of Ballwin (July 11, 1966) reads as follows: "In any case where property is not specifically within a district shown on the District Map, such property shall be considered as being within the R–1, Single-Dwelling Family District until or unless otherwise classified by ordinance. All territory which may hereafter be annexed to the City of Ballwin shall be automatically classified in the R–1 Single-Family Dwelling District until otherwise classified by ordinance."

This ordinance fails to provide the minimal procedural requirements of notice and hearing required by the enabling act and set forth above, and for that reason alone is invalid zoning legislation. City of Monett, Barry County v. Buchanan, Mo., 411 S.W.2d 108, 113[2]; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411[5].

But it is also suggested that the City of Ballwin ordinance is valid, absent any of the procedural requirements, because its function is that of an "interim" zoning measure. The question of the validity of interim zoning ordinances has appeared only sporadically in Missouri case law. In State ex rel. Kramer v. Schwartz, supra, 336 Mo. 932, 82 S.W.2d 63, the court rejected the validity of "interim" ordinances, stating: "In our view, both of the provisions of the Enabling Act just mentioned [public hearings and the appointment of a board of adjustment] are material and substantial requirements intended to safeguard the property owner, the public, and the munici-

pality against injustice, error, and precipitate or ill-advised action by local legislative bodies or administrative officers, are mandatory in character, in that compliance with these requirements is essential to the validity of any zoning ordinance, whether denominated 'interim' or permanent, passed under the authority of the act." (l. c., p. 67).

In State ex rel. Sims v. Eckhardt, supra, Mo., 322 S.W.2d 903, 908 (1959) the court explicitly refused to rule on the validity of "interim" zoning measures in Missouri because the ordinance in question contained nothing on the face of it to show it was interim or temporary. However, the court did acknowledge the judicial acceptance of such measures in other jurisdictions. The Kansas City Court of Appeals accepted the validity of an interim ordinance in Smith v. City of Lee's Summit, Mo.App., 450 S.W.2d 485, 489 (1970). In that case a temporary classification of annexed land, pending completion of a land use study by experts, was made by means of a standing ordinance. The facts in State ex rel. Sims v. Eckhardt, supra, Mo., 322 S.W.2d 903, were distinguished because there the ordinance permanently fixed the classification of land and thus was required to comply with the "formalities affirmatively required by statute as a condition to original zoning." Furthermore, the validity of the interim ordinance was not challenged in *Smith.*

■ In the case at bar any determination as to the ordinance being classified as "interim" would have to flow from a factual analysis of the ordinance. However, even if the ordinance was classified as "interim" and found valid, it does not necessarily follow that any subsequent act of zoning on the property would constitute an act of rezoning. The function of an interim ordinance is inherently different from its permanent counterpart. The former acts as a temporary or emergency measure to preserve the status quo and thus prevent the establishment of uses which would be for-

bidden by impending and contemplated ordinances. A permanent ordinance is designed to promote the orderly growth and development of a municipality and, in so doing, promote the health, safety, morals, and general welfare of the municipality. § 89.-020. This difference in purpose as well as the failure of an interim ordinance to follow the procedural requirements of §§ 89.050 and 89.070 justifies the denial of the label, "act of original zoning", for the purpose of requiring subsequent legislation to be treated as a change and thus subject to the more stringent voting requirements of § 89.060.

■ Plaintiffs next contend that the St. Louis County designation was an act of original zoning and all subsequent legislation by St. Louis County or an annexing city is subject to protest by petition and thus requires a three-quarter majority vote. The Missouri courts have not previously dealt with this specific issue and plaintiffs cite two cases not within this jurisdiction to support their argument. These cases, in effect, conclude that a change in boundaries should have but a minimal effect on zoning ordinances which govern the conduct of landowners. According to this philosophy, a change of boundary lines should constitute merely a change of sovereign, not a change in zoning. Highland Village Land Company v. City of Jackson, 243 Miss. 34, 137 So.2d 549[1]. See also City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660, 663[1]. Likewise, the existence of a corporate boundary line should not deny an adjacent landowner outside the city standing to challenge the validity of a proposed zoning classification, a right granted to residents of the corporate entity. Whittingham v. Village of Woodridge, 111 Ill.App.2d 147, 249 N.E.2d 332.

■ An examination of cases decided in other jurisdictions in this general area indicates that the zoning status of an annexed territory will depend upon the statutory scheme in effect in that particular state.

In any event, a prior ordinance cannot control the right of a city to zone land annexed by the city. See 41 A.L.R.2d 1463. Missouri provides no statutory mandate for zoning annexed property other than that within the enabling act already discussed. Thus, the relation of a prior zoning restriction to newly annexed property must depend upon a consideration of the entire act and its purpose, by giving the words used their ordinary meaning, and by seeking to avoid unjust, absurd, unreasonable, confiscatory and oppressive results. Suburbia Gardens Nursery, Inc., v. County of St. Louis, Mo., 377 S.W.2d 266, 271[3].

In State ex rel. Sims v. Eckhardt, supra, Mo., 322 S.W.2d 903, 907, the Supreme Court of Missouri stated: "The statutes contemplate [§ 89.010 to § 89.140] that zoning regulations, restrictions, and districts be well planned, and that they be of a more or less permanent nature and subject to change only to meet genuine changes in conditions. Kracke v. Weinberg, 197 Md. 339, 79 A.2d 387[6]." In Murrell v. Wolff, Mo., 408 S.W.2d 842, the Supreme Court also stated at page 852, citing 101 C.J.S. Zoning § 89: "Persons purchasing property in an area classified for certain land uses under a zoning ordinance have a right to rely on the rule that a general classification will not be changed unless required for the public good." Our Supreme Court has quoted with approval: " 'The stabilizing of property values, and giving some assurance to the public that, if property is purchased in a residential district, its value as such will be preserved, is probably the most cogent reason back of zoning ordinances' ". (Quotation from Marrs v. City of Oxford, (D.C.D.Kan.), 24 F.2d 541, 548). State ex rel. Stoyanoff v. Berkeley, Mo., 458 S.W.2d 305, 309.

It is obvious that concern for those governed by existing zoning regulations, and their right to rely upon and govern their conduct accordingly, has been clearly recognized by the Missouri courts. The enabling act also manifests this concern by requiring a three-quarter majority to amend, change, supplement, modify or repeal existing regulations, restrictions and boundaries. § 89.-060, supra.

When the City of Ballwin annexed the 78-acre tract on November 24, 1969, the board of aldermen then had before it for consideration an ordinance to zone the land for multiple-family dwellings. The land had been previously zoned for single-family dwellings by St. Louis County, a charter county, which received its authority to zone directly from the Missouri Constitution, V.A.M.S. (Article VI, Section 18(c) ) and charter provision, Article II, Section 2.180(22). The authority of the county to zone was not and could not be challenged. It was a regulation of the use of land that had existed for a period of time, during which plaintiffs and others had purchased homes in adjacent areas. These people relied upon the zoning regulations established by the county and had a right to rely upon them. Such zoning powers vested in charter counties by the Constitution are in the public interest and are designed to promote public health and welfare. St. Louis County v. City of Manchester, Mo., 360 S.W.2d 638, 642 [4]. Some of the stated objectives of zoning are "to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population * * *." § 89.040. With such salutory purposes, expressed by the legislature, we cannot lightly disregard the zoning of this land by the county and say that the city, after annexation, may proceed to zone, irrespective of whether it had been previously zoned. The effect of Section 89.060 is to require more than the usual majority of members of the board of aldermen to agree upon rezoning before it becomes effective, if a petition protesting the change is lodged. Change may be brought about only after serious deliberation and greater unanimity of opinion than in acts

of original zoning. The legislature when it passed this section, in our opinion, had this in mind when it imposed the requirements of a three-quarter vote before any change could become effective. We are confident that the legislature meant the word "change" included not only the amendment, supplement, change, modification or repeal of an existent valid zoning ordinance of the city, but also of a valid zoning ordinance duly imposed upon land by any properly authorized governmental subdivision or agency of the state, prior to annexation.

Such an interpretation, we believe, brings about a just and reasonable result. The protection and certainty of a prior zoning classification should be retained by an annexed territory until duly changed by the city which assumes legal control over the property so classified. The annexing city is being deprived of nothing. It still maintains the legal control permitted by statute. Likewise, the annexing city is not being forced to abide by a course of conduct prescribed by a sister branch of government. There is actually no change in the sovereign power. The state is the sovereign. There is merely a change in the administration of that power from one branch of the state to another. As stated previously, the right to zone is a delegated power, exercised by the city as an arm of the state. This police power must be considered exercised for the protection of all of the citizens of Missouri, and not just a certain segment segregated by the invisible boundary lines of a municipality. It logically follows that the defendant city cannot deprive the plaintiffs of the protection they were entitled to under Section 89.060 by ignoring the prior act of zoning of St. Louis County.

The St. Louis County zoning classifications Residential–3 and Flood Plain Residential–3 imposed on the 78-acre tract continued in effect after its annexation by the City of Ballwin until lawfully changed by municipal ordinance. Because a protest petition was properly filed with the City of Ballwin concerning the zoning change in question, a three-quarter majority vote was necessary to enact Ordinance No. 736. Since this vote was not secured, the defendants have not complied with the requirements of Section 89.060, and the ordinance is invalid. Geneva Inv. Company v. City of St. Louis (8th CCA 1937), 87 F. 2d 83, 87[1]; State ex rel. Sims v. Eckhardt, supra, Mo., 322 S.W.2d 903, 906 [5].

Having held Ordinance No. 736 invalid, it is unnecessary to consider plaintiffs' further contentions.

The judgment of the circuit court is reversed and the court is ordered to enter a judgment in accordance with the views expressed herein. In view of the possibility that retroactive application of the doctrine set out herein may be sought to attack the validity of established zoning ordinances, we direct that the law of this case shall be prospective only in its application after the date of this opinion.

BRADY, C. J., and DOWD, SMITH, and SIMEONE, JJ., concur.